## Morton *v.* Davis.

### Opinion delivered October 7, 1912.

DEEDS—CANCELLATION—OVERREACHING.—Whenever a person through age, decrepitude, affliction or disease becomes imbecile and incapable of managing his affairs, an unreasonable and improvident conveyance of his property will be set aside in equity.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*A. J. Newman,* for appellant.

The preponderance of the evidence shows that appellee was of sound mind and discretion when the deed was executed and delivered, and the chancellor's findings and decree should be reversed, 92 Ark. 359; 41 Ark. 292; 42 Ark. 521; 43 Ark. 307; 55 Ark. 112; 75 Ark. 72; 77 Ark. 216.

*Marshall & Coffman,* for appellee.

A clear preponderance of the evidence shows that appellee was of unsound mind, and not capable of making a valid deed,

at the time the deed to appellants is alleged to have been executed. The decree should be affirmed. 92 Ark. 30; 70 Ark. 173; 97 Ark. 450; 15 Ark. 555.

FRAUENTHAL, J. This is an action originally instituted by L. C. Maloney against J. T. and A. M. Morton seeking to cancel a deed executed by one Sylvia Davis to them, conveying certain land situated in Pulaski County, and to remove said deed as a cloud from his title to the land. The plaintiff claimed title to the land under a prior deed executed to him by said Sylvia Davis. Subsequently, said Sylvia Davis was made a party to the suit, and she appeared by her guardian, who filed an answer, which was also made a cross complaint against said parties, plaintiff and defendant. This pleading also asked that one James Turner be made a party to the suit, which was done, and prayed for a cancellation of a deed which she had also executed to him. In the cross complaint filed for her, it is alleged that Sylvia Davis was a person of unsound mind, and that a guardian was duly appointed for her by the probate court. It is further alleged that she was the owner of the land in suit, containing 105 acres, and that her interest consisted of a fee in one-half thereof and a life estate in the remainder; that she had made separate conveyances for the land to Maloney, the Mortons and Turner, and at the time she was incapable by reason of being of unsound mind to enter into said contracts, resulting in the execution of the deeds, which it was alleged were obtained without proper consideration and by imposition and fraud. The cross complaint sought the avoidance and cancellation of each of these deeds. Separate answers were filed by all said parties, except Turner, in which each of them alleged the validity of the deed executed to him, and sought the cancellation of the deeds executed by her to the other cross defendants.

A great mass of testimony was taken relative to the transactions had by each of these parties with Sylvia Davis, the condition and value of the land, the alleged consideration paid by each of them, and her mental condition. The chancellor entered a decree cancelling all of said deeds which had been executed by said Sylvia Davis, and restoring to each of the said grantees the moneys and property which each had paid for taxes and parted with for the deeds which they obtained.

The defendants J. T. and A. M. Morton alone have appealed from this decree.

It appears from the testimony that Sylvia Davis was a negro woman, variously estimated by the witnesses to be from eighty to one hundred years old. The land in controversy consisted of 105 acres, sixty of which were in a state of cultivation. It was estimated by the witnesses to be worth from one thousand to three or four thousand dollars, and its rental value was probably five dollars per acre for the land which could be cultivated. It appears that taxes had become due upon the land amounting to about $30, and that the land had been sold for the payment thereof. The plaintiff Maloney, who was a practicing attorney, agreed to perfect a redemption of the land from the tax sale, and also to collect the rents of the land. In 1908 he obtained from Sylvia Davis a deed for the land upon the consideration, as he claimed, of $5 then paid and the agreement upon his part to pay towards her support $10 per month during her life, not exceeding, however, the sum of $1,000. It appears from his testimony that he rented this land for the year 1910 for the sum of $390, but it does not appear that he ever paid to her any sum except the $5 above mentioned.

In February, 1910, either the above taxes or other taxes were due upon this land, and Sylvia Davis agreed with the defendants J. T. and A. M. Morton that she would give them one-third of the land to settle these taxes. Afterwards, they claimed that they entered into a contract with her by which they bought the land, and thereafter she executed to them a deed therefor. They paid to her $80 and to her nephew $25, and executed to her and her nephew a deed for a lot variously estimated to be worth from $100 to $400.

In March, 1910, she again executed a deed for this land, this time to said Turner. Turner executed to her notes for $2,500 and a mortgage upon the land. Turner filed no answer to the cross complaint, and it would be inferred from his actions that the notes were not executed with any expectation of making any payment thereof, but at the suggestion of an attorney who at one time claimed to represent Sylvia Davis in this litigation and later withdrew from the case, with probably the intention of further involving the title to this land. It would serve no useful purpose to detail the facts showing the mental condition of Sylvia Davis during all this time, nor the

circumstances attending the various transactions which she had with these various parties, culminating in the execution of these various deeds for this land. It is sufficient to say that it appears from the testimony that she was very old and infirm, feeble both in mind and body, and incapable of managing her affairs. The testimony was sufficient to warrant the finding that she was not of sound mind, and that her mental incapacity was such that she was unable to understand and appreciate the business involved in selling or conveying her land. She was not only of weak understanding, but she did not have capacity to take care of or to manage her property or to properly understand the effect of executing a deed for it. On account of her mental infirmities, it would appear that an undue advantage was taken of her by these parties in making these transactions and obtaining these deeds. The contracts made by her with each of them was unreasonable and improvident. These were the findings of the chancellor, and we can not say that his findings are against the weight of the evidence. On the contrary, after as careful an examination thereof as we are able to give, we think that the findings of fact made by him are well supported by the testimony. Under these findings of fact, equity and good conscience require the cancellation of these deeds.

The principle upon which this cancellation should be made is thus well stated in the case of *Kelley* v. *McGuire*, 15 Ark. 555: "While the solemn contracts between men should never be disturbed on slight grounds, yet it may perhaps be assumed as a safe general rule that whenever a person, through age, decrepitude, affliction or disease, becomes imbecile and incapable of managing his affairs, an unreasonable and improvident disposition of his property will be set aside in a court of chancery." See also *Killian* v. *Badgett*, 27 Ark. 166; *Tobin* v. *Jenkins*, 29 Ark. 151; *Oxford* v. *Hobson*, 73 Ark. 170; *Pulaski County* v. *Hill*, 97 Ark. 450.

The decree is affirmed.