HARRISON *v.* MORGAN-CURRY COMPANY.

Opinion delivered November 2, 1914.

1. BILLS AND NOTES—ENDORSEMENT—INNOCENT PURCHASER.—One who takes a negotiable note payable to order, by delivery merely, and without written assignment, is not an innocent purchaser, and takes subject to all equities between the original parties.

2. BILLS AND NOTES—UNENDORSED COLLATERAL.—Where a bank makes a loan to A., taking unendorsed notes payable to A. as collateral security therefor, the bank thereby acquires the equitable title to the latter.

3. BILLS AND NOTES—HOLDER FOR COLLECTION.—Although a note payable to order is unrestrictedly endorsed, a party who takes the note for collection only, is not a *bona fide* purchaser.

4. BILLS AND NOTES—ENDORSEMENT—BONA FIDE HOLDER.—A bank held an unendorsed note as collateral to a note to it executed by the payee. The bank was therefore the equitable owner of the collateral note, and it became a *bona fide* holder thereof when it had the same endorsed by the payee, "Pay to J. C. Savings Bank, or order," it having delivered the note to the savings bank for collection merely.

5. BILLS AND NOTES—BONA FIDE PURCHASER—ENDORSEMENT AFTER MATURITY.—Where appellant purchased the above collateral note from the legal owner *bona fide*, and in the due course of business, he became the *bona fide* holder of the same with the right to enforce collection against the maker, even though an endorsement thereof was not made to him until after maturity.

6. BILLS AND NOTES—BONA FIDE PURCHASER—ENDORSEMENT AFTER MATURITY.—Appellant purchased a note from a *bona fide* holder thereof. *Held,* although the note was not endorsed to him until after maturity, the appellant was himself a *bona fide* purchaser, and could enforce collection against the maker without regard to defenses existing between the original parties.

Appeal from Ouachita Circuit Court; *W. E. Patterson,* Judge; reversed.

STATEMENT BY THE COURT.

C. W. Harrison brought suit for $250 against the Morgan-Curry Company upon a promissory note made by them to the Puritan Manufacturing Company on Au-

gust 6, 1909, in which they agreed to pay to the order of said company $250 on February 1, 1910, and $250 on September 15, 1910, a copy of which note was exhibited with the complaint endorsed as follows:

"Bank of Stephens, at Stephens, Ark.:

"Pay Johnson County Savings Bank, Iowa City, Ia., or order.

"Puritan Manufacturing Company.

"By M. H. Taylor, October 12, 1909.

"Pay C. W. Harrison or order.

"Johnson County Savings Bank, Iowa City, Ia.

"Geo. L. Falk, Cashier.

"H. O. Niching, Asst. Cashier.

"March 25, 1910, $250."

The defendant company admitted the execution of the note, but denied that plaintiff was a *bona fide* holder thereof; denied that he purchased the said note for a valuable consideration before maturity; also alleged that it was executed under a contract made with the Puritan Manufacturing Company for the purchase of a lot of jewelry which was guaranteed to be of the same quality and grade as the samples exhibited by the agent of said company and salable at a reasonable profit; that said representations were false and fraudulent, and that the jewelry was absolutely unsalable and worthless and failed in every particular to come up to the quality and character as stated in the contract. It offered in its answer to return all of the goods remaining on hand to the manufacturing company, and alleged, further, that the plaintiff did not purchase the note sued on for a valuable consideration before maturity and that he was not an innocent holder. Appellee admitted the execution of the note which was read in evidence with the endorsements.

The testimony shows that the Puritan Manufacturing Company, the payee of the note, borrowed $2,500 from the Iowa National Bank, executing its note therefor for that sum and put up as collateral to secure its payment, the note sued on herein with other notes; that the first $250 of this note was coming due and it was placed

with the Johnson County Savings Bank of Iowa City, for collection and endorsed to it by the payee, as already stated, on October 12, 1909; that thereafter the manufacturing company was not able to take up its loan in the Iowa National Bank and same was purchased in December, 1909, by C. W. Harrison, the plaintiff, and the collateral was also turned over to him; the written endorsement of this note to him by the Johnson County Savings Bank not having in fact been made thereon until July 8, 1912. The appellant testified that he was the owner of the note sued on and purchased it in December, 1909, and left it in the Johnson County Savings Bank for collection, but through some oversight the actual endorsement to him was not made until July 8, 1912; and further, "I purchased the note from the Johnson County Savings Bank, which bank was acting as agent for the Iowa National Bank which held the note as collateral on the $2,500 loan to the Puritan Manufacturing Company. The Iowa National Bank had this note and others in the hands of the Johnson County Savings Bank, which bank was merely the agent for the former bank. I took up this note for $2,500 given by the Puritan Manufacturing Company, the loan from the Iowa National Bank, and received along with it the collateral which was held as security for the loan. This note for $2,500 against the Puritan Manufacturing Company is still unpaid."

The financial secretary of the payee company stated that he endorsed the note for the Puritan Manufacturing Company on October 12, 1909, and had authority to endorse and negotiate the note; that it was endorsed to the Johnson County Savings Bank on that date; that this note was held as collateral by the Iowa National Bank on a loan of $2,500 to the Puritan Manufacturing Company which was coming due, and which the company was unable to meet, and that Mr. Harrison took up the loan and extended the time of payment; that the note was placed in the Johnson County Savings Bank on October 12, 1909, for collection.

The cashier of the Johnson County Savings Bank testified that he endorsed the note for the bank to C. W. Harrison on July 8, 1912, and in going over the papers held by his bank they discovered that this note that had been acquired by Harrison had not been endorsed at the time. He stated further that it was deposited with the Johnson County Savings Bank on October 12, 1909, for collection, and "we were acting as agents for the Iowa National Bank, which held the note as security on the loan made the manufacturing company;" and, further, that C. W. Harrison acquired title to the note in December, 1909, by taking up the loan from the Iowa National Bank for which the note was held as security, but that the endorsement to him was not in fact made until July 8, 1912, as already stated. The cashier of the Johnson County Savings Bank testified that the bank received the note sued on October 12, 1909, which was deposited in the bank for collection for the benefit of the Iowa National Bank, which was the owner of the paper.

The president of the appellee company testified that he bought $500 worth of jewelry and gave the two notes; bought it on a contract which represented it to be good stuff; bought it through a traveling salesman who did not have any samples to show us, and "It sold all right at first, but after we got acquainted—well, the confidence they had in us led them to buying it. Later on we could not sell it. In fact, we did not advertise to sell it. I examined some of the stuff that was brought back by some of our customers. It was black. I don't believe it was even brass. When we first got it it looked as bright as could be. We paid the first $250 note due in February. We offered to return the jewelry to them, and they refused to take it back. We did not ask them to give us goods of like kind and like value. When the second note became due it was presented to me by the Bank of Stephens and we had been notified a week or so before it was due that it was there for collection; we were notified again when it was due, and I said, 'Hold it off a few days, we want to look this over,' and really forgot the matter until

the collector came back the second time.'' He also read the contract for the purchase of the jewelry.

The court instructed the jury, refusing to direct a verdict for the plaintiff, and the jury found for the defendant, and from the judgment plaintiff appealed.

*J. W. Warren,* for appellant.

Appellant was an innocent purchaser of the note 1 Daw. on Neg. Inst. 601, § 748; 7 Cyc. 938; 1 Daniel, Neg. Inst., p. 668.

*Gaughan & Sifford,* for appellee.

1. This case is similar to 73 Ark. 15; 90 *Id.* 78. Under the law as stated in 73 Ark. 15, there was a warranty of the salability of the goods.

2. Appellant was not a *bona fide* purchaser. The note was payable to ........ *or order.* The note must be endorsed before maturity. Where one takes a note for collection merely it does not become a purchaser for value. 99 Ark. 386. Not only delivery but *endorsement* is necessary. 2 Randolph on Com. Paper, § 988; 1 Daniel on Neg. Inst., § 731, and 1 Edwards, § 519; 7 Cyc. 791-926; 99 Ark. 460.

KIRBY, J., (after stating the facts). Appellant contends that without regard to any defenses that might have existed between the original parties to the transaction, he is the *bona fide* holder of the note, having acquired the same for value before maturity and without notice of any defenses thereto, while the appellee contends that the note was not in fact endorsed to the appellant until long after its maturity; that he was not, therefore, an innocent purchaser, and that it had a complete defense to the note as against the payee thereof within the doctrine announced in *Main* v. *El Dorado Dry Goods Co.,* 83 Ark. 15, and *American Standard Jewelry Co.* v. *Hill,* 90 Ark. 78. The note was not in fact endorsed to the plaintiff until after its maturity, but the uncontradicted testimony shows that he purchased the note of the Iowa National Bank for which this was held as collateral security in December, 1909, and that the principal note and the collateral, in-

cluding this note, was delivered to him at the time. This would not, however, give him standing as an innocent purchaser, there being no written endorsement of it to said bank or to him.

(1)  In *Webster* v. *Carter,* 99 Ark. 460, the court said: "The authorities appear to be unanimous in holding that one who takes a negotiable note payable to order by delivery merely, and without written assignment, is not an innocent purchaser, and takes subject to all equities between the original parties." Cyc. says: "Endorsement is the only method recognized by the law merchant for the complete legal transfer of a bill or note payable to order, * * * and unless negotiable paper is payable to bearer, * * * endorsement is necessary to constitute the holder of such paper a purchaser in the ordinary course of business, and where he receives the paper from the original payee by assignment or sale instead of endorsement, he obtains no title superior to that of payee." 7 Cyc. 791-926.

(2)  There is no question but that the Iowa National Bank having made the loan to the Puritan Manufacturing Company and having taken this unendorsed note as collateral security therefor, thereby acquired the equitable title to the same. 7 Cyc. 818, 1 Dan., Neg. Int., § § 664-741. "The assignment of any particular claim is considered an equitable assignment of all securities held by the assignor to the assignee. Thus, the assignment of a debt by whatever form or transfer carries with it any bill or note by which it is secured, and the converse of the proposition is equally true, that the transfer by endorsement or assignment of a bill or note carries with it all securities for its payment, whether they exist by way of mortgage, deed of trust, or otherwise." 1 Daniel on Negotiable Instruments, § 748.

(3-4-5).  The Iowa National Bank by the delivery of this note to it as collateral thereby became the holder of the equitable title to same and had it endorsed by the payee: "Pay Johnson County Savings Bank, Iowa City, or order," and placed it with said endorsee for collection.

This endorsement was not restrictive and transferred the legal title, but since it was in fact placed for collection, it did not constitute the Johnson County Savings Bank a *bona fide* purchaser. *Second National Bank* v. *Bank of Alma,* 99 Ark. 386. Notwithstanding this is true, the Iowa National Bank being the equitable owner of the paper, and its agent being the legal holder thereof by said endorsement, it acquired the entire title to the note, having the right to direct its legal transfer, thereby becoming a *bona fide* holder thereof as effectually as though it had been properly endorsed to it in the first instance. After it became such owner or holder, the appellant herein acquired of said *bona fide* holder in December, 1909, the principal note with this note as collateral in the usual course of business, and became a *bona fide* holder thereof, with the same right to enforce its collection as the Iowa National Bank had. After the note was acquired by appellant, the sum due thereon in February, 1910, was paid without any complaint or intimation that any defenses existed as against the payee, and this long before the amount sued for herein became due. He took it from a *bona fide* holder and acquired all his rights thereunder, notwithstanding the endorsement was not in fact made to him until after maturity. "A party with notice of defects in negotiable paper may still be a *bona fide* holder within the meaning of the law merchant, as if he took it from a *bona fide* endorsee or bearer, who purchased it for value before maturity, as he then obtains all the title and rights of such endorsee or bearer. Thus, where a party acquires paper after maturity from a *bona fide* holder, who took it before maturity for a valuable consideration; he is to all intents and purposes himself a *bona fide* holder." 7 Cyc. 938; 1 Dan., Neg. Inst., § 762a-782.

(6) The appellant purchased this note, and it was in fact delivered to him long before the amount sued for thereon became due, and, having acquired it from a *bona fide* owner and holder, he is entitled to collect it without regard to the defenses existing between the original par-

ties, and notwithstanding it was not in fact endorsed to him until after maturity.

The court erred in not directing a verdict for the amount sued for. Its judgment is reversed and judgment will be entered here for the amount of the note with interest. It is so ordered.