JOHNSON *v.* T. M. DOVER MERCANTILE COMPANY.

Opinion delivered May 19, 1924.

1. ALTERATION OF INSTRUMENTS—JURY QUESTION.—In an action on a note, alterations on its face did not call for a directed verdict for defendant sureties where the evidence was conflicting as to whether such changes were made before or after the note was signed by them.

2. ALTERATION OF INSTRUMENTS—MATERIALITY OF CHANGES.— Changes in a note with respect to the name of the payee and the date from which interest is to run are material if made after the note was signed.

3. BILLS AND NOTES—ACQUIRING TITLE WITHOUT INDORSEMENT.— One acquiring title to a note by delivery without indorsement takes subject to defenses available against his transferrer.

4. BILLS AND NOTES—HOLDER NOT IN DUE COURSE—DEFENSE.—Where a bank as payee took a note without notice that it was delivered in violation of condition imposed by sureties, and delivered it

to another without indorsement, the defense of such violated condition was not available to sureties on the note against the latter holder, notwithstanding the latter was not a holder in due course. ·

5. BILLS AND NOTES—UNAUTHORIZED SIGNATURE—RATIFICATION.— In an action on a note, testimony *held* insufficient to show ratification by sureties whose signatures were affixed without authority.

6. BILLS AND NOTES—RATIFICATION OF SIGNATURE.—An offer by a surety to pay a *pro rata* share of a note, to which his signature had been forged, was not a ratification of the forgery, but a mere offer of compromise.

7. PRINCIPAL AND SURETY—ERASURE OF SURETY'S NAME—INSTRUCTION.—Where the holder of a note testified that, after its delivery, O. R. asked to be substituted for his brother, W. T. R. as surety, and that he then drew a line through the first two initials of W. T. R's. name, not to erase it, but as a memorandum of a proposition, subject to approval of the other sureties, which was refused, and that the line was subsequently erased, an instruction that drawing the line through W. T. R.'s initials relieved the other sureties was properly refused.

8. APPEAL AND ERROR—PRESUMPTION THAT JURY FOLLOWED INSTRUCTION.—Where, in an action on a note, the court instructed that, if the note was altered as shown on its face after it went into the hands of the payee, the jury should find for the defendant sureties, on appeal from a verdict for plaintiff it will be assumed that the alterations were made before the payee received the note.

9. BILLS AND NOTES—FAILURE OF CONSIDERATION.—Where, after delivery and maturity of a note, an additional surety signed it for the purpose of relieving another surety, but, on objection of other sureties, the latter's name was retained, the consideration for the additional surety's signature failed.

10. PRINCIPAL AND SURETY—EFFECT OF RELEASE OF SURETIES.—In an action on a note, where the names of three persons appearing as sureties were forged, the action as to them must be dismissed, and the liability of the remaining sureties reduced proportionately, under Crawford & Moses' Dig., § 8283.

Appeal from Polk Circuit ·Court; *B. E. Isbell,* Judge; reversed in part.

*Lake & Lake* and *Minor Pipkin,* for appellant.

There was such an alteration within the meaning of C. & M. Dig., § 7891, as to avoid the note. Change of payee is a material change. 2 C. J. 1215; 8 C. J. 728.

See also 102 Ark. 302; 49 Ark. 40; 143 Ark. 292; 150 Ark.
85; 8 C. J. 730.

Appellee is not a holder in due course.   99 Ark. 459;
115 Ark. 44; L. R. A 1918F; C. & M. Dig. §§ 7815, 7824;
119 Ark. 334.   The erasure of one of the signatures to
the note without the knowledge or consent of the others
is such an alteration as avoids liability of the noncon-
senting parties.   88 Mo. A. 117.   A restoration of an
instrument once materially altered is ineffective.   86 A.
S. R. 119, note.   The court should have instructed a ver-
dict in favor of J. C. Allen, G. H. and F. L. Johnson,
since their signatures to the note were proved to be for-
geries.

*Norwood & Alley,* for appellee.

The name of the payee was not changed after delivery
of the note, but, if so, the change as made was not such
as to avoid the payment of the note by the appellants or
any of them.   See L. R. A. 1916F, p. 294; 139 Ala. 286;
48 Cal. 147; 143 Ill. App. 244; 62 Ind. 401; 3 Page, Cont.,
§§ 1514, 1515; 22 Min. 257; 187 Mo. App. 621; 46 Iowa
515; 80 Iowa 151; 130 Mo. App. 665; 74 Tex. 222; 83
Wis. 233; 127 Ark. 234; 131 Ark. 185.   The name of W.
T. Rowe was never stricken off the note.   No mention of
forgery was made in the answer of J. C. Allen, F. L. and
G. H. Johnson, and they should be held to the issues ten-
dered by the answer.   46 Ark. 129.   It is no defense that
the note was delivered without the security being given
to the signers, and before all the sureties had been
secured.   70 Ark. 512; 99 Ark. 319.

SMITH, J.   The T. M. Dover Mercantile Company, a
corporation hereinafter referred to as the company, owned
on and prior to July 10, 1921, $3,600 in United States Gov-
ernment bonds, which on that date it sold and delivered to
L. H. Johnson and received in payment therefor the note
upon which this suit is based.   Johnson at the time was
vice-president of the Bank of Hatfield, and he knew that
the company had these bonds in the vault of the bank.
Johnson had applied to the company several times to
buy the bonds.   He had no money to pay for the bonds,

but proposed to give a note. Finally M. J. Dover, the president of the company, agreed to sell the bonds to Johnson upon the condition that Johnson could procure the indorsement of twelve or fifteen solvent sureties. Johnson prepared the note and proceeded to obtain the required indorsements. The note used was one of the printed notes which the bank kept in stock for its own use, and it named the bank as payee therein, and it read that it bore interest from maturity, the note evidently having been prepared in contemplation of the fact that the bank would deduct interest on any loan made by it in advance. Johnson proceeded to get signers on the note and reported progress to Dover, and he finally secured the signatures of fifteen persons, and the note was then considered sufficient.

R. B. Holder was the cashier of the bank at that time, and he delivered the note to Dover and took possession of the bonds for the account of Johnson and sold them and credited the proceeds of the sale to Johnson's account, the principal portion thereof being used to discharge an overdraft of Johnson's outstanding in the bank at the time of the sale of the bonds. At the time of this sale Dover and the company were customers of the bank, but neither owned any stock or had any part in the management of the bank.

The note was not paid at maturity, and this suit was brought to enforce payment. In bringing the suit the company alleged that the note was originally made payable to the bank and was afterwards transferred to the company by delivery. The name of the bank as payee had been stricken out with a pen and the name of the company inserted as payee, and the word "maturity" had been erased and the word "date" inserted, the effect of these changes being to make the note payable to the company instead of to the bank and to bear interest from date instead of from maturity.

After instituting this suit the company was advised that the makers of the note intended to deny liability on the ground that there had been a material alteration in

the note by changing the name of the payee, whereupon the company amended its complaint to allege that the note as executed was payable to the bank and that some one without authority changed the name of the payee, in which condition it was assigned to the company.

Dover, who acted for the company in the matter, testified that he made no alteration of any kind, and that, so far as he was advised, no alteration had ever been made, as the note, when delivered to him, was payable to the company and bore interest from date instead of maturity, and, as the note should have been executed in this manner, he supposed it had been. According to Dover, the company acquired the note without notice that any alteration had been made, but the complaint was amended to meet the proof which Dover was advised the makers of the note intended to offer.

The answer denied that the company was the owner of the note and denied that the company acquired it in due course, and alleged that the note was void because of the alterations mentioned above; alleged that there had been a premature delivery of the note in that Johnson had agreed that he would, before the delivery of the note, indemnify the sureties by executing to them a mortgage on certain cattle he owned, but this he never did; alleged that certain signatures were forgeries, and that, after the delivery of the note, the name of W. T. Rowe, one of the makers, had been erased from the note and the name of Ober Rowe substituted therefor, and that this had been done without the knowledge or consent of the other makers of the note, and that the note had been prematurely delivered in that it was agreed that certain other signatures would be secured before the note was delivered.

Dover testified that the bank had no interest whatever in the transaction and that its name was brought into the litigation only because Johnson had used one of the printed notes of the bank, and there appears to be no doubt about this fact. Dover testified that he noticed the written changes that had been made, but he attached no

significance thereto, as there were changes which should
have been made to conform the note to his contract with
Johnson, and he assumed without inquiry, when Holder
delivered the note to him, that they had been made before
the note was signed. There was testimony on the part of
some of the makers that the note was payable to the bank
and bore interest from maturity instead of from date
when they signed it, and that Johnson had agreed to
execute a mortgage to indemnify them before delivering
the note, and that certain other signatures were to have
been procured before the note was delivered. There was
no testimony that Dover knew, before receiving the note,
of any of the conditions about getting other signers or
giving a mortgage to indemnify those who did sign.

It is first insisted that the verdict should have been
directed in favor of all the defendants for the reason that
the note had been materially altered.

It may be conceded that a change of payee and of
the date from which interest was to be computed were
material changes (§ 7891, C. & M. Digest); but it
does not follow that the verdict should have been directed
in defendants' favor on that account, for, according to
Dover, no alteration of the note was made after its
delivery to him for the company, and, if this is true, he
acquired such rights as the bank had, and these rights
will be discussed in connection with the instructions given
in the case.

The makers of the note insist that there is no ques-
tion about the alteration of the note to submit to the jury,
as the most casual observation would disclose an altera-
tion, and they insist that, on this account, the verdict
should have been directed in their favor. We do not so
interpret the testimony. It is true the printed blank was
changed as stated above, but these changes were not
alterations at all within the meaning of the Negotiable
Instruments Act, if they were made before the note was
signed. Altering the blank note to conform to the agree-
ment between Johnson and Dover before the note was
signed would not be an alteration of the note itself, for

the printed piece of paper with the interlineations did not become a note until it was signed, and the question whether the note was changed after it had been signed was one of fact which was submitted to the jury.

It is conceded that the company was not a holder in due course because the note was not indorsed by the bank to the company. The company acquired its title by delivery without indorsement, and therefore took subject to such defenses as were available against the bank. Secs. 7796 and 7797, C. & M. Digest; *Webster* v. *Carter*, 99 Ark. 458; *Harrison* v. *Morgan-Curry Co.*, 115 Ark. 44; *Hooten* v. *State*, 119 Ark. 334.

By § 7894, C. & M. Digest, it is provided that, in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable, and, as we have said, there was no testimony that either the bank or the company was advised that the note was not a completed instrument, ready to be delivered, at the time of its delivery to the company by Holder, although there is testimony that alterations were made after the note was signed.

Holder, the cashier of the bank, testified that L. H. Johnson told him the note was ready to be delivered, and that Johnson authorized him to deliver the note and to collect for it, and that, pursuant to this direction, he did deliver the note to the company, and he sold the company's bond for Johnson's account and applied the proceeds of the sale thereto. The jury evidently credited this testimony, as they had the right to do, and, as the bank did not know there was a premature delivery—if this testimony is credited, as it was—then the bank did not know that the delivery was premature, and that defense is not available against the company.

"Where a surety signed a note as joint maker and left it in the hands of his principal, who procured it upon condition that it be first signed by a co-surety, but delivered it to the payee, who took in good faith without notice of such agreement, the surety is bound for its payment." *Williams* v. *Morris,* 99 Ark. 319; *Stiewel* v. *American*

*Surety Co.,* 70 Ark. 512; *J. R. Watkins Medical Co.* v. *Warren,* 150 Ark. 542.

The court gave instructions telling the jury that it would be no defense to the note that Johnson represented to his sureties that he would execute a mortgage to indemnify them, or that he would secure additional signatures, before delivering the note, unless these facts were communicated to the company at the time or before the note was taken over by the company, but would be a defense if the company was so advised. Under these instructions the verdict of the jury is conclusive that the company took over the note in ignorance of these conditions.

It is insisted that the verdict should have been directed in favor of J. C. Allen, G. H. Johnson and F. L. Johnson, whose names were signed to the note, for the reason that the testimony shows the signing of their names was a forgery. These three gentlemen all testified that they did not sign the note and did not authorize any one to sign their names, and L. H. Johnson admitted that he had himself signed their names, intending to secure their assent to this action before delivering the note, but he authorized the bank to deliver the note to the company before that consent was obtained, and without advising the bank that these signatures had been forged.

In instruction numbered 1 the court told the jury that, if the names of these three persons were signed to the note by L. H. Johnson without authority from them so to do, they would not be bound on the note, unless the jury found from a preponderance of the evidence that, after their names were so signed, they consented thereto or ratified the same. It is urged that this instruction is abstract, as there was no testimony upon which the jury could have found that the signature had been ratified.

It is answered that L. H. Johnson testified that he had, with authority, signed the names of these gentlemen many times to negotiable paper, but that he had no authority to sign their names to the note here sued on. Allen was his brother-in-law, and the two Johnsons were

his brothers, and, when Allen was advised by Dover, for
the company, that his name appeared on the note, he wrote
the company that he would call to see about it; and all
three of these gentlemen proposed to pay their *pro rata*
parts of the note if they were discharged upon doing so,
but the company refused to accept such payment as a dis-
charge of their liability.

We think this testimony is insufficient to support a
verdict that Allen or either of the Johnsons ratified the
signing of their names. The letter from Allen was a mere
inquiry, and the proposition to pay a *pro rata* part was a
mere offer of compromise which did not amount to a
ratification of their signatures.

Among other signers of the note was W. T. Rowe,
and it appears that Ober Rowe, a brother of W. T., asked
to have his name substituted on the note for his brother
W. T., and gave as his reason for desiring to have this
done that W. T. Rowe was at the time in bad health and
was worried about the note. It appears that Ober Rowe
was equally as solvent as his brother, and Dover tes-
tified that he told Ober Rowe that he had no objection to
this substitution if it did not affect the validity of the
note and was satisfactory to the other signers, and that
Ober Rowe thereupon signed the note, and he drew a line
through the initials "W. T." on the note, not for the
purpose of erasing the name of W. T. Rowe from the
note, but as a memorandum of the proposition of Ober
Rowe, and that the line extended only through the
initials of W. T. Rowe, and that, when the transaction was
not approved by the other makers of the note, he erased
the line which he had drawn through the initials of W.
T. Rowe, leaving his name on the note as one of the
makers. Ober Rowe testified that he signed the note for
the purpose of securing the release of his brother by
substituting his name for that of his brother; but this
conflict in the testimony was submitted in an instruction
reading as follows: "The jury are instructed that, if
they believe from the evidence that the name of W. T.
Rowe was stricken from the note in question by the plain-

tiff or some one representing the plaintiff, this invalidated the note as to all who signed or indorsed it before that was done, unless you find the striking of such name, if you find such name was stricken out, was done with the consent of the parties to the note.''

The defendants asked other instructions on this issue, which were refused. One of these instructions would, if given, have told the jury that, when Dover struck out the name of W. T. Rowe, he invalidated the note as to every one who had theretofore signed the note or indorsed it.

A sufficient reason for refusing this instruction is that it assumes that the name of W. T. Rowe was stricken from the note, whereas Dover testified that this was not done, and that the conditional arrangement to that effect never became effective.

Other instructions requested by the defendants on this subject also assumed that, if any part of the signature of W. T. Rowe was stricken out, it was done for the purpose of releasing him, and they were properly refused for that reason.

The instruction given told the jury as a matter of law that striking out the name of the bank as payee and the change of the date from which interest would be calculated were material alterations, which would invalidate the note if they were made by Dover; and the jury was also told, if the note was altered as indicated on its face before it went into the hands of the bank, to find for the defendants who had theretofore signed it. But, as the verdict was in favor of the company, we must assume that the jury found that the alterations were made before either the company or the bank received the note. The testimony was legally sufficient to support this finding, as Dover so testified, and we need not therefore consider any question of the preponderance of the evidence on this issue of fact.

The verdict and judgment was against all the defendants, including Ober Rowe. In view of the facts which we have stated and the instructions given, the jury must

have found that the name of W. T. Rowe was not stricken from the note, and, if this is true, the consideration moving Ober Rowe to sign the note failed. According to Dover's own testimony, the name of W. T. Rowe was not stricken from the note. The name of Ober Rowe was signed after the maturity of the note, in fact it was the last name signed, and the consideration for his signature admittedly failed, and the judgment should not have been rendered against him.

The judgment against Ober Rowe, J. C. Allen, G. H. and F. L. Johnson must therefore be reversed, and the cause as to them will be dismissed; but, inasmuch as there were fourteen sureties who signed the note, it follows that, the release of Allen and the two Johnsons because their names were forged, operates to diminish the liability of the remaining sureties to the extent of three-fourteenths of the note (§ 8223, C. & M. Digest), and the judgment against them will be reduced to this extent, and, as thus reduced, will be affirmed.