LEWIS *v.* PETTIS.

Opinion delivered May 23, 1927.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— The chancellor's finding of fact based on conflicting evidence has persuasive authority, and is entitled to weight and consideration on appeal.

2. CANCELLATION OF INSTRUMENTS—EVIDENCE.—The cancellation of a deed from aged negroes to the wife of the family physician *held* not error, in view of testimony that they were incapable of making a valid conveyance.

3. CANCELLATION OF INSTRUMENTS—IMPROVIDENT DISPOSITION OF PROPERTY.—While solemn contracts between men should never be disturbed on slight grounds, yet, whenever a person through age, decrepitude, affliction or disease becomes imbecile and incapable of managing his affairs, an unreasonable or improvident disposition of his property will be set aside in a court of chancery.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

*Sheffield & Coates,* for appellant.

*Moore, Walker & Moore,* for appellee.

KIRBY, J.   This appeal comes from a decree of the chancery court of Phillips County canceling a deed made by appellees to appellant, conveying 156.86 acres of land, upon allegations that same was procured by false and fraudulent representations and impositions upon the grantors, aged and ignorant negroes of feeble mind and intellect, lacking capacity to make such conveyance.

The answer denied the allegations of the complaint; alleged that the grantors understood the nature of the transaction; that, although the deed recites only the payment of $10 consideration and other good and valuable consideration, the grantee agreed to pay $2,000 for the lands, and executed 10 promissory notes for the sum of $200 each, payable yearly, one each year, on the same date, the first one the 24th of March, 1925; that she also assumed the payment of an indebtedness to the bank of $400, secured by a mortgage on the land; had paid the interest of $40 due thereon and kept it up since; made improvements thereon amounting to $769.39; that they had put the lands into appellant's hands to sell, and, after several unsuccessful attempts to make the sale thereof for $2,000, they had importuned appellant to purchase the lands, which was done on the terms alleged.

The testimony shows that the grantors, old and feeble, past 70 years of age, lived alone on the lands, and were not able to cultivate them; that they were ignorant and childish and incapable of intelligently comprehending their acts or making a valid conveyance of their lands; that they did not understand they had made such a conveyance anyway, but only thought they had executed a contract to convey at the end of the 10 years, when all the consideration was paid, and that the contract and notes would be held by the bank until it was performed. There does appear in the record a copy of a contract

of the kind, bearing date two days after the execution of the deed.

The testimony is in conflict as to the mental capacity of the grantors in the deed, but we cannot say that the finding of the chancellor, that they were incapable of intelligently comprehending or acting upon the affairs out of which the conveyance grew and understanding the nature and consequences of their act in making it, is against the preponderance of the evidence. In this kind of a conflict the chancellor's finding has persuasive authority, and is entitled to weight and consideration.

The evidence discloses, as found, that the lands were worth about $5,000, that they were conveyed for a grossly inadequate consideration by these old negroes, and no lien retained in the deed nor security given even for the payment of the amount agreed to be paid.

One of the witnesses, a merchant and banker, who had known and dealt with the appellees for 20 years, testified that, in his opinion, they were incapable of making a valid conveyance of their property; that they had approached him and desired to convey their lands to him if he would take care of them during the balance of their lives, but he did not believe them possessed of sufficient understanding to make a conveyance of their lands, and would not permit them to do so. Then, too, appellant's husband, who negotiated the transaction for her, was the family physician of the grantors.

Other witnesses testified that the grantors had sufficient capacity to understand the consequences of their act and to make a valid conveyance of their lands, and that the arrangement made with appellant was really to their advantage under the circumstances, if faithfully carried out.

The rule under which such conveyances are set aside has been followed by the court since its announcement in *Kelly's Heirs* v. *McGuire*, 15 Ark. 555, as follows:

"While the solemn contracts between men should never be disturbed on slight grounds, yet it may per-

haps be assumed as a safe general rule that, whenever a person, through age, decrepitude, affliction or disease, becomes imbecile and incapable of managing his affairs, an unreasonable or improvident disposition of his property will be set aside in a court of chancery.'' See also *Oxford* v. *Hobson,* 73 Ark. 170, 83 S. W. 942; *Boggianno* v. *Anderson,* 78 Ark. 420, 94 S. W. 51; *West* v. *Whittle,* 84 Ark. 490, 105 S. W. 955; and *Morton* v. *Davis,* 105 Ark. 104, 150 S. W. 117.

The chancellor also ascertained the balance due appellant on account of payments and improvements made after charging her with rents for the time the place was occupied, and fixed a lien on the lands for the payment thereof.

On the whole case we find no prejudicial error, and the decree is affirmed.