SHULTZ CONSTRUCTION COMPANY *v.* CRAWFORD COUNTY BANK.

Opinion delivered November 3, 1930.

574 ■

*Hardin & Barton,* for appellant.

*C. M. Wofford* and *Partain & Agee,* for appellee.

HART, C. J., (after stating the facts). The first contention of appellants, Shultz Construction Company, is that the court erred in not directing a verdict in their favor. In this contention, we think they are correct. It is settled in this State, as well as elsewhere, that one who takes a negotiable note, payable to order, by delivery merely and without written assignment, is not an innocent purchaser and takes subject to all equities between the original parties. *Webster* v. *Carter,* 99 Ark. 458, 138 S. W. 1006; and *Harrison* v. *Morgan-Curry Co.,* 115 Ark. 54, 170 S. W. 578.

When the instrument is payable to the order of the payee, indorsement is necessary to constitute the holder of commercial paper a purchaser in the ordinary course of business, and where he receives the paper by assignment or sale instead of indorsement, he takes it subject to all equities. In the application of this principle of commercial law in *O. J. Lewis Mercantile Co.* v. *Harris,* 101 Ark. 4, 140 S. W. 981, 37 L. R. A. (N. S.) 544, it was held that the drawee of a draft, payable to order, who takes upon a forged or unauthorized indorsement does so at his peril. The court said that it is well settled that the

holder of commercial paper, payable to order, must trace his title through a genuine indorsement, and that the drawee of a draft, payable to order who takes upon a forged or unauthorized indorsement does so at his peril. Again, in the application of the principle in *Schaap* v. *First National Bank,* 137 Ark. 251, 208 S. W. 309, it was held that a bank collecting checks payable to plaintiff, which were without authority indorsed by plaintiff's collecting agent, is liable therefor to plaintiff if he was innocent of fraud or negligence, irrespective of the bank's good faith in paying the check to another than plaintiff.

This is in recognition of the general rule that a bank or other corporation, or an individual, who has obtained possession of a check upon an unauthorized or forged indorsement of the payee's signature and who collects the amount of the check from the drawee or holder of the check is liable for the proceeds thereof to the payee or other owner, notwithstanding they have been paid to the principal, from whom the check was obtained. *Allen* v. *Mendelsohn & Son,* 207 Ala. 527, 93 So. 416, 31 A. L. R. 1063; *Merchants' Bank* v. *National Capital Press,* 53 App. D. C. 59, 288 Fed. 265, 31 A. L. R. 1066 and case note at 1068; and *California Stucco Co.* v. *Marine National Bank,* 148 Wash. 341, 268 Pac. 891, 67 A. L. R. 1531.

This rule of commercial law has not been changed by our Negotiable Instruments Act. Section 7796 of Crawford & Moses' Digest, provides that an instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder completed by delivery. Section 7797 provides that the indorsement must be written on the instrument itself. Section 7825 provides that every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument is defective, the burden is on the holder to prove that he or some other person under

whom he claims acquired the title is holder in due course. Section 49 provides that when the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, etc.

In the present case, the undisputed evidence shows that the check was cashed by the plaintiff and was not indorsed by the Barnsdall Refining Company to the order of which it was drawn by the Shultz Construction Company. Hall testified in positive terms that he did not indorse it and had no authority to do so. Spradley testified that Hall did not indorse it for the Barnsdall Company, and that he indorsed it for that company. He admitted that Hall told him that he had no authority to indorse it. If Hall did not indorse it and had no authority to do so, he could not confer such authority upon Spradley. The cashier of the bank says that Spradley indorsed it in his presence before he cashed it. He also said that it was purported to be indorsed by the Barnsdall Refining Company, and if the cashier had made a close inspection of that indorsement, he would have seen that it was in the same handwriting as the indorsement of his own name by Spradley. Therefore the undisputed evidence shows that the bank cashed the check with the indorsement of the payee on it by a person who was not authorized to indorse it. In this view of the case, the bank took the check without the indorsement of the payee on it, and thereby took it subject to all equities. The undisputed evidence shows that the Barnsdall Refining Company does not claim that the Shultz Construction Company owes it anything or that it authorized the check to be drawn in its favor. The Barnsdall Refining Company does not claim that the construction company owes it the amount of the check or that it is entitled to it. Hence there is no liability on the part of the defendant construction company to an action on the check.

This brings us to a consideration of whether there would be any liability on the tickets which are purported

to have been given haulers to haul batch on the road work near Charleston in Franklin County, Arkansas. We are of the opinion that the undisputed evidence shows that these checks were not issued by the Shultz Construction Company or by any one for it. Mahoney testified positively that he did not issue any of the checks. He examined them all and said that the signature which purported to be his own was not signed by him nor was any one else authorized to sign them for him. Roy Shultz, one of the defendants, testified that he was on the work at all times and knew in a general way that most of the tickets which had been issued to haulers on the work had been cashed at the branch office of the company at Charleston. Most of the haulers were witnesses in the case and testified that they cashed their tickets at the office of the company. Roy Shultz also testified that he was familiar with the signature of Mahoney and that the signature in question was not that of Mahoney. Mahoney said that he signed the tickets with an indelible pencil, and that the tickets examined by him had been signed in pen and ink. Thus it will be seen that the undisputed evidence shows that the tickets in question were not issued by the defendants.

The mere fact that the tickets were issued on the blank forms prepared by the defendants does not show that they were issued by authority of the defendants. All banks prepare printed forms to be used in their business, but these blanks are to be filled out and used by the customer. The mere fact that a company has blank forms for use in its business does not imply that any one who fills them out makes a *prima facie* case of his right to do so. The undisputed evidence shows that the tickets in question were signed by some one who was not authorized to do so, and it is immaterial, for the purposes of this case, to discuss or consider who that person might have been. It is sufficient to say that the undisputed evidence shows that it was not done by an agent of the Shultz Construction Company or by any one authorized by them to issue them.

It follows that the judgment must be reversed, and, inasmuch as the case seems to have been fully developed, the complaint will be dismissed here.