WILMANS *v.* PEOPLES BUILDING & LOAN ASSOCIATION.

4-4406

Opinion delivered November 9, 1936.

*C. B. Erwin, Jr.,* for appellant.

*Fred M. Pickens,* for appellee.

BUTLER, J. In 1932, there were two business enterprises conducted in the town of Newport, Jackson county; one, the First National Bank of Newport, and the other, the appellee, Peoples Building & Loan Association. W. T. Parish was the cashier of the former and the secretary-treasurer of the latter. In October, 1932, while Mr. Parish was occupying the positions mentioned, R. D. Wilmans, executed a note for $750, dated October 26, due ninety days after date, and naming Parish as the payee. Subsequent to this transaction Mr. Parish's connection with the above-named institutions ceased, and his successor as secretary-treasurer of appellee association discovered the Wilmans note, indorsed by Parish, in the papers of the association. Payment on the note being refused, an action was instituted by the appellee association in the circuit court of Jackson county to recover on the same. The defendant, Wilmans, answered, and, on his motion, the cause was transferred to equity.

The trial resulted in a decree in favor of appellee association from which this appeal is prosecuted.

As a defense in the court below, and in this court, it is insisted that the note was obtained through fraud imputable to appellee for the reason that it was practiced by its secretary-treasurer, and that the appellee association was not a *bona fide* purchaser of the note in due course of business. The evidence relied on to support these contentions is practically undisputed, and is to the following effect: W. T. Parish approached appellant with the request that they exchange notes. Parish, because of his connection with the bank, did not want to raise money on his personal note, but preferred to use Wilman's note for that purpose. Accordingly, Wilmans executed the note sued on, and Parish gave his note to Wilmans for a like amount. It was Wilmans' understanding that the money on his note was to be obtained from the bank, and that Parish would, himself, pay it when it became due. The note which Parish gave in exchange for the accommodation note of Wilmans was placed by Wilmans in his safe, and he has never attempted to collect on it. He received no notice from the bank or any one else that the note had not been paid until December, 1934. Wilmans relied upon the representation of Parish that the note would be cleared through the bank, and would not have given Parish the note had he known that the money was to be procured from the association. If Parish had procured the loan from the bank, notice would have been given Wilmans when the note matured, if it had not been paid, and he could have gotten in touch with Parish and forced him to pay the note. Instead of handling the note as Wilmans thought he would, Parish indorsed the note in blank, filed the same with the securities of the association, and, as secretary of the association, drew a check payable to "R. D. Wilmans' note." No indorsement was made upon the check, but it was cashed by Parish in his capacity as cashier of the bank, and charged by the bookkeeper and assistant cashier to the account of the association. This bookkeeper also kept the books of the association for Mr.

Parish, but no credit was entered on the books for the $750.

Although Mr. Wilmans testified that he understood the note would be handled by the First National Bank of Newport, the note was not made payable to the bank, and, while in a sense the making of the note was an accommodation to Parish, there was a valuable consideration moving between the parties, namely, the note executed by Parish to Wilmans. It is evident that at that time Wilmans thought Parish was good for his obligation, for he stated in his testimony that he had "perfect confidence in him." Parish was Wilmans' brother-in-law, and, from the important positions which he held, we gather that he was a man of standing and affairs.

If it be granted that there was fraud practiced by Parish in the procurement of the note, and the authorities cited by appellant are in point, we fail to perceive how his fraudulent conduct, if any, can be imputed to the appellee association. The transaction complained of was for the personal benefit of Parish, did not relate to any business of the association, and, therefore, was not within the scope of his employment, and his knowledge cannot be imputed to the appellee. *Bank of Hartford* v. *McDonald*, 107 Ark. 232, 154 S. W. 512; *Futrall* v. *McKennon*, 187 Ark. 374, 59 S. W. (2d) 1035. The doctrine cited by appellant to the effect that notice to an agent of a corporation of any fact or facts connected with the business in which he is employed is notice to the corporation, (*Mullanphy Sav. Bank* v. *Schott*, 135 Ill. 655, 26 N. E. 640, 25 Am. St. Rep. 401; *Burditt* v. *Porter*, 83 Vt. 296, 21 Atl. 955, 25 Am. St. Rep. 763; *Bond* v. *Stanton*, 182 Ark. 289, 31 S. W. (2d) 409; *Scott* v. *Carnes*, 183 Ark. 650, 37 S. W. (2d) 876; *Detroit F. & M. Ins. Co.* v. *Helmes*, 184 Ark. 308, 42 S. W. (2d) 394), has no application to the case at bar. Also, the case of *Willis* v. *Denise*, 50 N. J. E. 482, 26 A. 29, 35 Am. St. Rep. 788, relied on by the appellant, is not in point because the association in the case at bar received no benefit from any of the transactions conducted by its agent.

The real situation presented by the record in this case is that the act of Wilmans put it in the power of

Parish to obtain money on the faith of the note he had received from Wilmans. That he obtained the money from the association instead of the bank, or some one else, cannot avail the appellant, for, as to the maker, the appellee association was an innocent holder for value. This becomes more apparent when we consider the contention that the action on the note cannot be maintained because the act of acquiring it was an *ultra vires* act and void. It must be conceded, from an examination of the by-laws of the association and the testimony of its directors: first, that it was not contemplated that the association should make investments with the security only of negotiable instruments, but that the securities for its investments were of a different and higher character; second, that all loans and investments of whatever character could only lawfully be made by the authority of its loan board; and third, that such authority was not obtained for the lending of the $750 on the Wilmans note. But, by the execution of a note to Parish, Wilmans clothed Parish with authority (in so far as third parties are concerned) to negotiate the note to the use of whomsoever he would, and the advantage gained by Parish must be attributable to the act of Wilmans. Therefore, in contemplation of law, Wilmans secured an advantage by the transaction which he now alleges to have been *ultra vires* and void.

This court, in *Minneapolis Fire & Marine Mut. Ins. Co.* v. *Norman,* 74 Ark. 190, 85 S. W. 229, 109 Am. St. Rep. 74, 4 Ann. Cas. 1045, held that where a corporation had obtained the full benefit of a transaction, such corporation was estopped to plead its *ultra vires* nature; and, in *White River, etc., Co.* v. *Star R. & L. Co.,* 77 Ark. 128, 91 S. W. 14, we held that a party dealing with a corporation could not attack the right to recover on the ground that the contract was *ultra vires* where the party had received the benefit arising out of the transaction. These two decisions recognize the doctrine that to permit either party to take advantage of the *ultra vires* act of the other, where the party seeking to avoid the contract has received the full benefit of the transaction, would be inequitable and against a sound public policy

which discourages fraud. In *Bath Gas Light Co.* v. *Claffy,* 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664, the court said: "Public policy is prompted by the discouragement of fraud and the maintenance of the obligation of contracts, and to permit a lessee of a corporation to escape the payment of rent by pleading the incapacity of the corporation to make the lease, although he has had the undisturbed enjoyment of the property, would be, we think, most inequitable and unjust." This principle was recognized in the case of *Bloom* v. *Home Ins. Agency,* 91 Ark. 367, 121 S. W. 293, and, in the case of *Russell* v. *Cassidy,* 108 Mo. App. 577, 84 S. W. 171, it was held that the maker of a note cannot defend an action thereon by the payee, or its assignee, on the ground that the corporation payee had no power to take it. In that connection, the court said: "The present action is upon a note, of which, *prima facie,* and in the absence of testimony to the opposite effect, defendant received the benefit; and it would be inequitable and unjust to permit defendant to question the power of the payee to accept the note from him. The maker of a note cannot defend an action on the note brought by the corporation or its privy on the ground that the corporation had no corporate power to take the note."

The doctrine of these cases recognized an exception to the general rule stated in *Central Transit Company* v. *Pullman, etc., Co.,* 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55, that "all contracts made by a corporation beyond the scope of those powers (that is, those enumerated in the charter) are unlawful and void, and no action can be maintained upon them in the courts."

The facts in the instant case bring it within the exception, and the trial court was correct in holding that the plea of *ultra vires* was unavailing to the appellant. We conclude that the decree was correct, and it is, therefore, affirmed.