## EVANS *v.* OZARK ORCHARD COMPANY.

### Opinion delivered April 15, 1912.

1. SALES OF LAND—TIME OF PERFORMANCE.—Though a contract for the purchase of land stipulates that an abstract of title shall be furnished within thirty days and that time shall be of the essence of the contract, the vendee will be held to have waived the time requirement where he subsequently insisted upon the performance of the contract. (Page 217.)

2. SAME—VENDOR'S LIEN—INTEREST.—In enforcing a vendor's lien, it is error to include in the judgment interest on a purchase money note which was not then due. (Page 218.)

3. SPECIFIC PERFORMANCE—DAMAGES.—In a decree enforcing specific performance of a contract of sale of land, it is error to charge the vendor with the attorney's fees which the vendee incurred in the litigation. (Page 219.)

Appeal from Benton Chancery Court; *T. Haden Humphreys,* Chancellor; reversed in part.

*Rice & Dickson,* for appellant.

1. The abstract tendered did not show a marketable title. The acknowledgment was not good as a *corporate* act and no seal was attached. 78 Ala. 542; Maupin on Marketable Title, p. 61.

2. Waiver of performance by contract does not apply after nonperformance after breach. A waiver to be binding must either operate by way of estoppel or be supported by valuable consideration. 72 Ark. 525.

3. Failure of one party to comply with terms releases the other party from compliance with it. 65 Ark. 320; 12 *Id.* 148; 9 *Id.* 489; 29 A. & E. (2 ed.) 1102; 97 Ark. 43.

4. A reasonable time is so much time as is required or necessary to do what requires to be done. 75 Me. 493; 23 A. & E. (2 ed.) 585; 18 Am. St. 187.

5. Time was of the essence of the contract. 26 A. & E. Enc. (2 ed.) 74, 75, 694, 621, and notes; 4 Ark. 279; 26 *Id.* 506; 18 Am. St. 187; 20 Am. Dec. 185; 39 *Id.* 342; 59 *Id.* 678.

6. No formal demand is necessary where defendant disputes his liability to return the purchase money. Maupin on Marketable Title to Real Estate, 558; 27 N. E. 217.

7. A mistake as to the property purchased warrants a rescission. 28 Am. St. 91; 24 A. & E. Enc. (2 ed.) 618. Notice of disaffirmance is not a prerequisite to relief. 24 A. & E. Enc. (2 ed.) 620; 18 Mass. 334; 12 Ind. 503; 47 Minn. 491; 54 *Id.* 90. Where a purchaser received neither title nor possession, no notice of purpose to rescind nor tender is necessary. 24 A. & E. Enc. (2 ed.) 621, 622-4. Suit by a vendee is a disaffirmance. 33 Am. Dec. 426; Maupin on Marketable Title, etc., 550, 73. See also generally 95 Cal. 334; 38 Ark. 178; 20 *Id.* 424; 2 A. & E. Ann. Cases, 930, on disaffirmance and tender and demand, or 102 Cal. 317; 26 Ill. 396; 79 Am. Dec. 381; 42 Minn. 59; 148 N. Y. 558; 85 Cal. 518; 93 Ill. App. 549; 84 Minn. 195; 69 Am. Dec. 399; 30 Me. 332; 209 Ill. 437; 63 Kan. 672; 87 Cal. 275; 5 Am. Dec. 635; 18 Am. St. 187.

*Edward C. Wright* and *Dick Rice,* for appellee.

1. Delivery of deed and the making the payment of purchase money are mutual and dependent agreements, and performance or offer to perform by the purchaser is necessary to make it incumbent on a seller to deliver the deed. 33 Pac. 407; 5 Ark. 419; 7 *Id.* 207; 15 *Id.* 465, 488. The action was premature. 114 Pac. 1034; 116 S. W. 1117; 14 *Id.* 323.

2. There was no laches on appellee's part. 18 A. & E. Enc. 97; 37 Atl. 804; Pom. Eq. Jur. vol. 5, § 21; 49 Pac. 679; 5 Words & Phrases, §§ 3969-3972; 92 Pac. 801; 90 Fed. 189; 38 Pac. 756; 114 Pac. 134.

3. After abandonment of the contract by appellant appellee owed him no duty, and could demand performance. 27 Ark. 61; 120 S. W. 139; 9 Cyc. 641, 115 S. W. 157.

4. Time was properly granted to perfect the abstract of title. 12 S. W. 306; 36 Cyc. 627-8; 118 Pac. 32.

5. The acknowledgment was a good corporate act. 119 S. W. 820; 118 Pac. 32; 29 S. W. 729; 87 Pac. 1076; 10 Cyc.

1003-1018. No seal was necessary. 24 Law. Ed. (U. S.) 544; Acts 1907, p. 354.

6. Where lands are sold for a sum in gross, * * * the purchaser has no remedy for any excess or deficit unless so great as to raise a presumption of fraud. 199 Ill. 46; 114 S. W. 782; 118 S. W. 953. The quantity is mere description, in absence of fraud or mistake. *Ib.*

7. Expenses of litigation are not recoverable. 13 Cyc. 79. Nor are attorneys' fees allowed. 13 Cyc. 80, note 72; 11 S. W. 578; 91 S. W. 18.

McCULLOCH, C. J. Defendant and cross-complainant Ozark Orchard Company (a Missouri corporation) owned a tract of 2,000 acres of land in Benton County, Arkansas, a considerable portion of which was set in apple trees. It platted the land in small tracts of about five acres each, and placed same on the market for sale. Its principal office and place of business was in Kansas City. Plaintiff, C. W. Evans, resided at Rockford, Illinois, and entered into negotiations with a broker or selling agent for the purchase of some of said lands. He visited Benton County and, after inspecting the lands, selected six lots, containing thirty acres, and concluded to purchase same at the price of $7,850, payable $1,000 cash, $2,925 in about thirty days, and the remainder in two equal installments due and payable in one and two years, respectively, with interest from maturity. He went to Kansas City for the purpose of completing the purchase, and there entered into a written contract with defendant, at the latter's office, for said purchase upon the terms aforesaid. But a mutual mistake was made in selecting, from the map or blueprint, the particular lots he desired to purchase, and the mistake was carried into the written contract by describing the wrong lots. The contract stipulated that defendant should within thirty days from date furnish a "complete abstract to said land, brought down to date of filing the plat thereon, showing good merchantable title," and that, "at any time after said party shall have paid fifty per cent. of the full purchase price of said land, the first party, upon request and the payment by second party of all taxes and interest then due, and the surrender of this contract, shall convey said land to second party by a good and sufficient deed, containing the usual covenants of warranty against

incumbrances existing at the date of this contract or created by first party thereafter, but subject to the unpaid purchase money for which second party shall concurrently execute a deed of trust or mortgage and notes on forms furnished by and acceptable to first party, payments to be reserved same as in this contract unless changed by mutual consent." The contract also contained the following clause:

"And it is hereby agreed and covenanted by the parties hereto that time and punctuality are material and essential ingredients in this contract, and, in case the said second party shall fail to make the payments aforesaid, and each of them, punctually and upon the strict terms and times above limited and likewise to perform and complete all and each of said agreements and stipulations aforesaid, strictly and literally, without any failure or default, including the prompt payment of all taxes and assessments upon the said lands; before the same shall become delinquent according to law, then this contract, so far as it may bind said party of the first part, shall become utterly null and void, and all rights and interests hereby created or then existing in favor of the second party, or derived from him, shall utterly cease and determine, and the right of possession, and all equitable and legal interests in the premises hereby contracted shall revert to and revest in said party of the first part, without any declaration of forfeiture or act of re-entry or any other act of said party of the first part to be performed, and without any right of said second party of reclamation or compensation for moneys paid or services performed or improvements made, as absolutely, fully and perfectly as if this contract had never been made."

The contract was executed in Kansas City on June 13, 1910, and the second payment of $2,925 was stipulated to be paid July 10, 1910. Plaintiff made the cash payment of a thousand dollars on that day, and, waiving the time given for making the second payment, also paid that on the same day, which was the day of the execution of the contract. He made arrangements to have the orchard land plowed, and then went back to his home in Illinois, expecting to return to Arkansas in a short time and take possession of the land purchased. He left his home in Illinois on July 10 to return to Arkansas overland in an automobile, and arrived at Gentry,

the town nearest the land, a few days thereafter, the precise date not being stated.    He found the parties to whom he had given instructions to plow the land at work on different lots from those which he had selected and which he understood to be in the contract, and this led to the discovery of the mutual mistake between the parties in describing the lands.    Further negotiations soon led to an agreement for the correction of the mistake so as to include the lots which plaintiff wanted.    On July 23, 1910, defendant's agent sent down a deed conveying the lots originally included by mistake in the contract, but this deed was rejected and returned because of the mistake, and it was thereafter that the agreement was made for the correction of the mistake.    Defendant sent another deed, correctly describing the lots purchased, but that was rejected because it included and charged plaintiff for a portion of the lot covered by the public road.    Plaintiff had referred the matter of adjustment of the difference to his attorney, Mr. C. M. Rice, of Bentonville, and so notified defendants, and on September 8, 1910, defendant wrote to Mr. Rice expressing its willingness to adjust the matter satisfactorily and convey the lots which plaintiff had selected.    The letter was misdirected to C. N. Rice, Bentonville, Arkansas, and Mr. C. M. Rice testifies that he did not receive it.    The letter was not answered, but on October 18, Mr. Rice wrote to defendant as follows:

"Unless you indicate your intention and purpose to make and execute to Mr. Evans a warranty deed for the lots which he says he purchased, and which you finally agreed he should have, and according to the terms of the contract—that is, without reservation of any part or parcel, and furnish to him an abstract as per contract, by the twenty-fifth day of October, we will consider that you are not going to meet his demands, and we will take such steps as to us seems right and proper to secure his rights in the matter."

On October twenty-first defendant wrote Rice & Dickson, the firm of attorneys of which Mr. C. M. Rice was a member, calling attention to the unanswered letter of September 8, and stating that defendant was "ready to carry out the contract with Mr. Evans and to deed him the property for which he contracted and according to the terms of the contract.    We shall

be glad to be advised promptly what Mr. Evans intends to do in this respect."

This letter was not answered, and on November 2 plaintiff commenced an action against defendant in the chancery court of Benton County, setting forth a breach of the contract by defendant and praying for a decree enforcing a lien for the part of the purchase price paid. In February, 1911, a demurrer was sustained to the complaint, and plaintiff took a nonsuit. A short time thereafter he renewed the litigation by commencing the present action to obtain the same relief as that sought by the first complaint. The defendant filed an answer and cross-complaint, denying, in substance, any breach on its part of the contract and expressing its willingness to carry out the contract, and praying for specific performance thereof and the enforcement of a lien on the property for the unpaid purchase price.

The court rendered a final decree in the cause at the October term, 1911, in which it found that plaintiff had waived the failure to furnish abstract of title within the time specified; that defendant had not broken the contract, and awarded specific performance and a lien in defendant's favor for the amount of the unpaid purchase price with interest, after crediting the sum of $150 as a reduction for the land covered by the public road, and also after crediting the plaintiff with the sum of $350 as damages for attorneys' fees paid by him in the litigation. Both parties appealed.

The principal argument made by counsel for plaintiff as ground for reversal is that, in the stipulation for furnishing an abstract within thirty days, time was of the essence of the contract, and that defendant broke the contract by failing to comply with that provision thereof. We are of the opinion, however, that, the chancellor was correct in holding that, even if time is to be deemed to be of the essence of the contract in this particular, plaintiff waived it. His own testimony shows that, after the expiration of the thirty days, he insisted on the correction of the mistake and the performance of the contract as late as October 18, 1910, when his attorneys wrote to defendant that he was still insisting on the performance of the contract. This amounted to a waiver of the time, and the question then was whether the abstract was furnished within

a reasonable time. In the letter of October 18, a demand was made for furnishing the abstract on or before October 25. But we can not say that the chancellor erred in holding that this was not a reasonable time for a compliance with the contract in that respect. Especially is this true when we find that defendant, instead of refusing to perform the contract in any respect, immediately replied to the letter calling attention to the former unanswered letter and asking for further statement as to what the plaintiff intended to do. There were mutual undertakings in the contract with respect to executing notes and mortgages, etc., and there had been prior differences concerning the deduction for the land covered by the road. It was not unreasonable for the defendant to ask for a specification as to precisely what the plaintiff intended to do with respect to these differences before preparing the deed. At any rate, plaintiff's demand was for a summary performance of the contract within a time so short that we are unable to say that the chancellor was in error in holding it to be unreasonable. Immediately thereafter plaintiff cut off any further negotiations by repudiating the contract and bringing the suit to recover the money he had paid on the purchase price. At no place in the negotiations, either before the commencement of this action, in the correspondence between the parties, or in the pleadings, do we discover any disposition on the part of defendant to evade the terms of the contract or to refuse to carry it out in good faith. Defendant appears to have expressed a ready willingness to correct the mistake which was made in the description, and the other difference as to the part of the land covered by the public road seems to have been a *bona fide* contention between the parties, and was never at any time made a condition upon the performance of the contract. The attitude of defendant seems to be that of making an honest effort to comply with the plaintiff's demands, and we find nothing in the record which will justify a finding that defendant broke the contract or forfeited its rights thereunder. After the commencement of the suit, the defendant complied with the order of the court with respect to executing a deed and furnishing an abstract of title. We think the decree of the court, awarding performance of the contract and declaring a lien in defendant's favor, is correct and should be affirmed. The court, however,

included in the decree interest on the note, which was not then due, and to that extent it was erroneous, and will be modified.

Defendant, on its cross appeal, contends that the court erred in allowing a credit of the sum of $150 for the value of the land covered by the public road. This contention is based upon the argument that the title passed to the grantee subject to the public easement, and that the value should be included in the price. While it is true that the title to the land did in fact pass to the grantee, we are of the opinion that it was not in the contemplation of the parties that plaintiff was to pay for land to which he took title subject to the public easement, and we think, therefore, that the chancellor was correct in allowing credit for this amount.

The court erred in charging the defendant with the sum of $350 for plaintiff's attorney's fees, as this was not a proper element of damages. *Goodbar* v. *Lindsley,* 51 Ark. 380; *White River, L. & W. Ry. Co.* v. *Star Ranch & Land Co.,* 77 Ark. 128. As to that item the decree is reversed.

The cause will be remanded with directions to enter a decree in accordance with this opinion.

KIRBY, J., dissents.