TAYLOR *v.* KING.

Opinion delivered June 24, 1918.

1. JUDGMENTS—BAR TO DEFENSES.—The judgment or decree of a court of competent jurisdiction operates as a bar to all defenses, either legal or equitable, which were interposed, or which could have been interposed in the former suit.

2. JUDGMENTS—PERSONAL SERVICE—RECITAL IN DECREE.—Where a decree in a suit to foreclose a vendor's lien recited that defendant's were personally served with summons, an allegation and proof that defendants were not personally served can not prevail in a collateral attack upon the decree.

Appeal from Lafayette Chancery Court; *James M. Barker,* Chancellor; **affirmed.**

*McKay & Smith,* for appellants.

1. Appellee is a lawyer while appellants are ignorant negroes and were clients of his. They employed

him in a suit, and he obtained their signatures to the deed to the lands through fraud and fraudulent representations. 73 Ark. 575. The evidence shows fraud and that there was no consideration for the deeds.

2. The foreclosure decree is void because no service was ever had upon Maggie Nesbit and Ellen Modest. Kirby's Digest, § 6053. The records show no service. *Ib.* § 6264.

The appellee, *pro se.*

1. The decree is correct. No fraud was proven. No such defense was made in the foreclosure suit. 75 Ark. 575 is not applicable. This is a vicious collateral attack upon a decree. 118 Ark. 449; 121 *Id.* 475; 120 *Id.* 255; 125 *Id.* 125. The findings of the chancellor are sustained by the evidence.

2. Service is shown by the records on all the defendants and the decree recites due service. There is no error.

### STATEMENT OF FACTS.

This suit was commenced as an action in ejectment in the circuit court by D. L. King against Wade and Julia Taylor to recover 160 acres of land. Wade and Julia Taylor filed an equitable answer, and the cause was transferred to the chancery court. Maggie Nesbit and Ellen Modest, sisters of Julia Taylor, each claiming to be the owner of an undivided one-third interest in the land in controversy, asked to be made parties defendant and they were permitted to enter their appearance and adopt the answer of the defendants Wade and Julia Taylor as their own.

According to the testimony of D L. King, he is 67 years old and is a lawyer by profession. The land in controversy was originally owned by Ned Lemay, a colored person. Lemay mortgaged the land to Buchanan & Cornelius for a debt he owed them. Lemay died leaving surviving him his widow, Eliza Lemay, and three daughters, viz.: Julia Taylor, Maggie Nesbit and Ellen Modest. Buchanan & Cornelius, being unable to collect

their mortgage debt, prepared a deed to the land in controversy and tendered it to the widow and children of Ned Lemay, deceased, and asked them to execute the deed in satisfaction of the mortgage debt. The widow and children of Ned Lemay consulted with D. L. King about the foreclosure of the mortgage of Buchanan & Cornelius. They executed to him a deed to an undivided one-half interest in the land in consideration of his services in defeating the claim of Buchanan & Cornelius. On the same day King found out that the Bodcaw Lumber Company had been cutting timber on the land and entered into a written agreement with the same parties to collect from the Lumber Company the value of the timber cut in consideration that they pay him one-half of the amount collected. The contract and deeds were executed in January, 1907. A settlement was had with Buchanan & Cornelius with regard to the mortgage indebtedness and also the Bodcaw Lumber Company for the amount of the timber cut by it from the land. The amount recovered from the Bodcaw Lumber Company was sufficient to discharge the mortgage debt from Buchanan & Cornelius. In April, 1908, King sold to Julia Taylor, Maggie Nesbit and Ellen Modest, his interest in the land. They agreed to pay him $400 and executed to him their notes therefor. They failed to pay this indebtedness to King and he instituted a suit in the chancery court to recover judgment for the amount they owed him and to foreclose his vendor's lien. At the April term, 1911, of the chancery court, judgment was rendered against Julia Taylor for the amount of his indebtedness and a decree of foreclosure of his vendor's lien was also entered of record. The land was duly sold under the foreclosure decree for $300 and the purchaser at that sale conveyed the land to the plaintiff, King. No judgment was rendered against Maggie Nesbit and Ellen Modest, who resided in the State of Louisiana, and there was an order continuing the case in this respect against them until the next term of the court.

At the October term, 1912, of the chancery court, judgment was rendered against Maggie Nesbit and Ellen Modest for the balance of the indebtedness and in the decree there is a recital that Maggie Nesbit and Ellen Modest were served with summons in due time. The remaining undivided one-half interest of the defendants was sold under execution on the 20th day of December, 1912, to satisfy the balance due on the judgment against them. The lands were sold for the balance due and the costs of suit, and the purchaser at the execution sale conveyed his interest to D. L. King.

According to the testimony of Julia Taylor, Ellen Modest and Maggie Nesbit, they executed a written contract with D. L. King to look after the collection of the value of certain timber that had been cut and removed from their father's land and agreed to pay him therefor one-half of what he might recover. They denied that they had agreed to give him a one-half interest in their father's land and denied the execution of a deed to him therefor. They denied that they ever contracted with King to buy an interest in their father's land and testified that they could neither read nor write. They stated that the only written instrument they executed to King was to be used by him in recovering damages for the timber cut from the land, and that they did not understand that they were conveying the land to him. They were corroborated by the testimony of Wade Taylor, the husband of Julia Taylor. On the other hand the testimony of King was corroborated by that of his son-in-law.

The chancellor found the issues in favor of the plaintiff King, and against the defendants and cross-complainants. It was therefore decreed that the cross-complaint of the defendants be dismissed for want of equity and that the plaintiff's title to the land in controversy be quieted as against any claim of the defendants and that plaintiff have and recover possession of the land from defendants. The defendants have appealed.

HART, J., (after stating the facts). (1) The decision of the chancellor was correct. In the first place, it may be said that the issues sought to be raised in this suit might have been litigated and decided in the suit to foreclose the vendor's lien on the land in controversy which was brought against these same defendants. The rule has been often announced in this court that the judgment or decree of a court of competent jurisdiction operates as a bar to all defenses, either legal or equitable, which were interposed or which could have been interposed in the former suit. *Church* v. *Gallic,* 76 Ark. 423; *Livingston* v. *New England Mortgage Security Co.,* 77 Ark. 379; *Morgan* v. *Kendrick,* 91 Ark. 394; *Pulaski County* v. *Hill,* 97 Ark. 450; *Phillips* v. *Colvin,* 114 Ark. 14. When the suit was brought against the defendants to foreclose the vendor's lien on the land in controversy for the purchase money, it was the duty of the defendants to have presented all the defenses they might have to the suit. The defendants knew as well then as they did when this suit was brought the defenses they now present. All of the rights and matters asserted in this suit by the defendants could have been adjudicated in the foreclosure suit. Having failed to interpose any defense to that suit, they are barred by the decree in that case from seeking further to adjudicate the question in this case.

(2) It is also insisted that the decree of the chancery court foreclosing the vendor's lien of the plaintiff on the land in controversy is void because no service of summons was ever had upon Ellen Modest and Maggie Nesbit. It is true the evidence shows that Maggie Nesbit and Ellen Modest have been residents of the State of Louisiana since prior to the date of the first contract with D. L. King; but it also shows that the part of Louisiana where they reside was near to the part of Arkansas where all the transactions and court proceedings herein involved were had. The decree foreclosing the vendor's lien of D. L. King upon the land in controversy recites that personal service was had upon

Julia Taylor and constructive service was had upon Ellen Modest and Maggie Nesbit. A personal judgment was rendered against Julia Taylor for the amount of the debt; but this branch of the case was continued as to Maggie Nesbit and Ellen Modest. At a subsequent term, judgment was rendered against them for the balance of the debt and the judgment itself recites that personal service was had upon them. The cross-complaint of the defendants constitutes a collateral attack upon the decree of the chancery court foreclosing the vendor's lien of King and rendering judgment in his favor against the defendants for the amount of the debt.

Therefore the presumption is in favor of the validity of the decree in the foreclosure suit and the subsequent personal judgment against the defendants in the same court. The decree having recited that the parties were duly served with summons, the allegation and proof of the defendants to the effect that summons was not served upon them as required by law can not prevail against a judgment or decree regular on its face in a collateral attack. *Clay* v. *Barnes,* 121 Ark. 474; *Cassady* v. *Norris,* 118 Ark. 449; *Crittenden Lumber Co.* v. *McDougal,* 101 Ark. 390; and *Livingston* v. *New England Mortgage Security Co.,* 77 Ark. 379.

It follows that the decree must be affirmed.