TROXLER *v.* SPENCER.

5-447                                              270 S. W. 2d 936

Opinion delivered June 28, 1954.

[Rehearing denied October 4, 1954.]

W. B. Howard, for appellant.

Ivie C. Spencer and Penix & Penix, for appellee.

MINOR W. MILLWEE, Justice. Appellant, Owen Troxler, as lessee, and appellees, Ivie C. Spencer and J. H. Cain, as lessors, entered into a written contract of lease in November, 1950, wherein appellees leased certain lands in Craighead County, Arkansas, to appellant for a term of three years, for the purpose of raising rice. On October 24, 1952, appellant brought this action against appellee, praying judgment for damages to the rice crop grown on these lands which purportedly occurred through appellees' failure to furnish the crop with adequate water as required by their rental contract. Appellant also sought to recover for expenditures in excess of $1,400.00 which he had allegedly made in repairing a water well on the rice farm in an effort to prevent or minimize damage to the crop in question.

On February 2, 1953, appellees filed an answer denying the allegations of the complaint. The case was continued at the February term of court, and on August 28, 1953, appellees filed an amendment to their answer and a counterclaim for the amount of a power bill for 1952 which they had guaranteed to the power company in order that the appellant might have electric power to operate the pumps necessary to the irrigation system. On September 19, 1953, still before trial, appellees amended their counterclaim, praying judgment for $1,116.08 for the 1952 power bill. Further, the amendment alleged that due to appellant's refusal to use electric power during 1953 as provided in the contract, appellees incurred a liability for the sum of $445.46 which the electric company had charged them for furnishing power and electric facilities during that year. On September 21, 1953, appellant filed an amendment to his complaint and reply to appellees' counterclaim in which he demurred to that

portion of said counterclaim praying judgment for the 195ı and 1952 power bills and increased his own claim for damages from $6,000.00 to $10,398.21. Subsequently and during the trial appellant objected to appellees' proof on their counterclaim on the ground that said pleading was "prematurely commenced."

A five-day jury trial beginning on September 21, 1953, resulted in verdicts: (1) for the appellant for repairs made to the well and pump in the sum of $968.59; (2) for the appellees on appellant's claim for damage to the rice crop; and, (3) for the appellees on their power bill claim in the sum of $1,370.62. Balancing these findings against each other resulted in a net judgment in favor of the appellees in the sum of $402.03.

For reversal, appellant makes three arguments: (1) that the court erred in allowing appellees to plead and offer evidence on their counterclaim, because the counterclaim was premature; (2) the court erred in refusing to allow the appellant to re-open his case for the purpose of proving that the power company had breached its contract and had elected to terminate such contract; and (3) the evidence was not sufficient to support a finding that appellant was liable for the power bill of 1953. The trial court held appellees' claim for electric service for 1951 barred by a previous suit and appellant's arguments apparently relate only to the 1953 claim for electric service.

(1) Appellant contends that since the 1953 power service bill was not due, and had not been paid by appellees, when the suit was filed in October, 1952, it could not be made the basis of a counterclaim because it was premature. The lease contract provided that appellant "furnish the cost of electrical service for the operation of the electrical unit for the purpose of watering said rice." As previously indicated, there was included in appellees' amendment to their counterclaim filed September 19, 1953, the sum of $445.46 for which appellees became liable to and paid the power company as a minimum service charge for 1953 when appellant failed to use electric power that year. Appellant relies on the general rule to

the effect that a claim to be available as a counterclaim must be due at the time of the commencement of the action and cites such cases as *Hornor* v. *Hanks,* 22 Ark. 572, and *Pearce* v. *Hollis Construction Co.,* 212 Ark. 434, 206 S. W. 2d 15, in support of his contention. In answer appellees rely on such cases as *Midland Valley Rd. Co.* v. *Ennis,* 109 Ark. 206, 159 S. W. 214, and *Mueller* v. *Breckenridge,* 121 Ark. 633, 181 S. W. 145. In the Mueller case a defendant was permitted to prove matters set up in a cross-complaint which accrued after the commencement of the suit. However, it is only fair to state that none of the cases cited by either party is exactly in point on the present issue.

In recent years there has developed a wave of procedural reform which tends to brush aside traditional limitations on pleadings of counterclaims and set-offs in order that circuity and multiplicity of actions might be avoided and litigants enabled to settle all matters between them in a single action. Arkansas has been in the forefront of this movement. Prior to 1917 our Civil Code (Kirby's Digest, § 6099) defined a counterclaim as follows: ''The counterclaim mentioned in this chapter must be a cause of action in favor of the defendants, or some of them, against the plaintiffs, or some of them, arising out of the contract or transactions set forth in the complaint, as the foundation of the plaintiff's claim or connected with the subject of the action.'' This section was amended by § 1 of Act 267 of 1917 which now appears as Ark. Stats., § 27-1123, and reads: ''The counterclaim mentioned in this chapter may be any cause of action in favor of the defendants, or some of them against the plaintiffs or some of them.'' It is also now provided in the fourth subdivision of Ark. Stats., § 27-1121, that a defendant *must* set out in his answer as many grounds of defense, counterclaim, or set-off as he shall have, and we have held the provision mandatory. *Shrieves* v. *Yarbrough,* 220 Ark. 256, 247 S. W. 2d 193. We have repeatedly stated that the manifest purpose of the legislature in enacting the foregoing statutes was to permit litigants to settle all matters in dispute between them in

a single suit. *Church* v. *Jones,* 167 Ark. 326, 268 S. W. 7; *Futrall* v. *McKennon,* 187 Ark. 374, 59 S. W. 2d 1035.

Even under older and more restrictive code provisions in other states a defendant could have pleaded the 1953 power bill as a counterclaim, as appellees did in the instant case. In an annotation on the question in 17 Ann. Cas. 431, it is said: ''In a majority of jurisdictions it is held under code provisions that a counterclaim which arises out of the same transaction as that which is the subject of the plaintiff's demand need not be an existing demand in favor of the defendant on which he could have maintained an independent action at the time of the commencement of the action, but it is enough if it is such a demand at the time it is pleaded as a counterclaim.''[1] That is the situation presented in this case and it would seem elementary that appellees, when sued for a breach of the contract, should be permitted to recoup any damages sustained by reason of a breach of the same contract by appellant even though such damages had not accrued at the time of the commencement of the action. Appellant did not plead surprise nor request a continuance. Nor has he shown any prejudice to his rights by reason of the counterclaim. On the contrary, he resisted appellees' motion for a continuance and amended his complaint so as to increase his claim of damages by more than $4,000.00 on the day trial was begun. It is our conclusion that the trial court properly permitted the filing of the counterclaim by appellees and that such action was in line with the spirit and purpose of our statutes on pleadings.

(2) The second contention of appellant is based on the court's refusal to reopen the case on the fifth day of trial to permit appellant to offer proof that the power company had disconnected the electric power before the end of the 1952 pumping season, a fact alleged in the amended complaint but upon which no proof had been offered during the previous four days. The record reflects that after appellant had completed his rebuttal testimony on the afternoon of the fourth day of trial, both

---

[1] See also, Clark on Code Pleadings (2nd ed.) 633.

sides rested. On the morning of the fifth day of trial, and after counsel had made their respective objections to the instructions, counsel for appellant made his request stating that he had "inadvertently" closed his case on the previous afternoon without offering such proof. If the usual procedure was followed the court had already excused all the witnesses on the day before when both sides rested although the record does not affirmatively show that to be a fact. The reopening the case for further proof was, of course, a matter within the sound discretion of the trial court under our decisions. Under the circumstances presented here, we find no abuse of such discretion.

(3) Appellant's final argument is that the record is devoid of any evidence that appellees were entitled to recover for the 1953 power bill. As previously indicated, the contract between the parties required appellant to furnish "the cost of electrical service." There was testimony tending to show that the parties contemplated and intended that electrical equipment was to be used to irrigate the rice crops and that appellant was to pay the cost of such power. The questions whether appellant would be liable under the contract for only the electrical power which he actually used, as he contended, or, whether he would be liable for the minimum charge of the power company upon his failure to use the service in 1953, were submitted to the jury under instructions which are not questioned. The jury found in favor of appellees on this issue and their verdict is supported by substantial evidence.

We find no error, and the judgment is affirmed.