OLMSTEAD *v.* ROSEDALE BUILDING & SUPPLY, ET AL.

5-1568                                                                313 S. W. 2d 235

Opinion delivered May 19, 1958.

*Frank J. Wills,* for appellant.

*H. B. Stubblefield,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellants are F. H. Olmstead Company, Inc., and Frank H. Olmstead, its president and principal stockholder. Appellees are Rosedale Building & Supply Company, Inc., and C. C. Hudgens, its principal stockholder. On April 1, 1954, appellants bought certain assets of a building supply business from appellees located at 8108 Asher Avenue in Little Rock, Arkansas, executing secured notes for the greater portion of the purchase price. In the sales contract appellees agreed, as a part of the consideration for said sale, not to engage directly or indirectly in any business competition with appellants in the Rosedale Area of Pulaski County, as defined in the contract, for a period of three years.

A suit brought by appellants on August 12, 1955, for alleged breaches of the non-competitive agreement resulted in a decree entered May 2, 1956, enjoining appellees until April 1, 1957, from "directly or indirectly furnishing any building materials for the erection of, or erecting, any structures on any lands" in the restricted area and from engaging in any business competition with that of appellants in the area during said period. The cross-complaint of appellees seeking judgment against appellants for $1,470 in damages was ordered dismissed. We affirmed the decree in *Hudgens* v. *Olmstead Manufacturing Company,* 227 Ark. 475, 300 S. W. 2d 26.

Appellants defaulted on the monthly payments due on the purchase money notes which had been paid down to approximately $8,000 on July 12, 1957, when appellees brought the instant suit to foreclose their liens on the assets of the building supply business securing the payment of said balance. In their answer and counterclaim, appellants claimed actual and punitive damages in excess of the unpaid balance of said purchase money

notes on account of alleged breaches of the non-competitive agreement by appellees, and asked for cancellation of said notes and the mortgages executed to secure them. The reply of appellees contained a general denial and affirmatively pleaded the former suit and decree as *res judicata* and a complete bar to all matters alleged and relief sought against them in the counterclaim. By agreement, appellants paid $8,500 into the registry of the court and the liens held by appellees on the business assets were transferred to said fund and the assets released. This appeal is from a decree dismissing appellants' counterclaim and directing that their indebtedness to appellees in the amount of $8,366.80 be paid from the funds in the registry of the court.

It is first contended that the chancellor erred in holding that the prior suit between the parties precluded appellants from introducing evidence of breaches of the non-competitive agreement by appellees which occurred prior to May 2, 1956, the date of the former decree. This proof was offered in support of appellants' plea that such breaches resulted in a partial failure of consideration for the purchase money notes sued on. In this connection it was shown on the former trial that C. C. Hudgens was the principal stockholder in two building material businesses at the time of the sale of the assets of Rosedale Building & Supply Co., Inc., to appellants; and that the other corporation was then inactive but was reactivated by Hudgens shortly after the sale when he began constructing and selling homes on lots he owned in the restricted area, the materials being furnished by the reactivated corporation. Appellants' offer of proof in the instant suit related to the same alleged breaches of the agreement which were fully explored and enjoined in the prior suit. Appellants insist that since there was no specific prayer for damages in the former suit as to such breaches, they were entitled to litigate that issue here.

This presents a question upon which there is a sharp division of authority, particularly where the second suit

is one at law for damages. A statement by the text-writer in 28 Am. Jur., Injunctions, Sec. 309, indicates that most courts favor the proposition that, where damages are not sought as incidental to an injunction, the decree granting the injunction is not a bar to an action at law for past damages on account of the thing enjoined. However, other courts hold that an injunction decree is a bar to an action at law for past damages regardless of whether the plaintiff in the injunction suit pleaded damages, and regardless of whether there was an attempt to recover damages in that suit. The text-writer's statement as to the majority rule is based upon an annotation in 14 A. L. R. 543. A more recent annotation on the question in 26 A. L. R. 2d 446 indicates that most courts, including our own, hold that a decree deciding an injunction suit is *res judicata* in a subsequent action for damages of all issues determined in the injunction proceeding. Our own cases go further and hold that the decree in the injunction suit is also *res judicata* of all issues in a subsequent action for damages which could have been interposed in the injunction suit.

In *Gosnell Special School Dist.* v. *Baggett,* 172 Ark. 681, 290 S. W. 577, this court reversed and dismissed a circuit court judgment awarding damages to plaintiffs for breach of their contract to teach school and sustained the defense of *res judicata* interposed by the school district by virtue of a former injunction suit involving the same contract. In so doing, the court said it was unimportant that the plaintiffs did not ask the affirmative relief of damages for breach of the contract in the injunction suit and reaffirmed the following statement from *Taylor* v. *King,* 135 Ark. 43, 204 S. W. 614: "The rule has been often announced in this court that the judgment or decree of a court of competent jurisdiction operates as a bar to all defenses, either legal or equitable, which were interposed or which could have been interposed in the former suit." The court also approved the following statement in 15 R. C. L. Judgments, Sec. 439: "If it is doubtful whether a second suit is for the same cause of action as the first, it has been said to be a prop-

er test to consider whether the same evidence would sustain both. If the same evidence would sustain both, the two actions are considered the same, and the judgment in the former is a bar to the subsequent action, although the two actions are different in form.'' Many cases from other jurisdictions are cited in support of this general rule in 30A Am. Jur., Judgments, Sec. 365.

In *Robertson* v. *Evans,* 180 Ark. 420, 21 S. W. 2d 610, we affirmed a decree holding a former suit to redeem land and declare a deed a mortgage to be *res judicata* of a subsequent suit by the grantor to recover rents and damages for waste by defendants, although the grantor failed to assert such claim in the original suit. We there said: ''The test in determining a plea of *res judicata* is not alone whether the matters presented in a subsequent suit were litigated in a former suit between the same parties, but whether such matters were necessarily within the issues and might have been litigated in the former suit. *Gosnell Special School District No. 6* v. *Baggett,* 172 Ark. 681, 290 S. W. 577; *Cole Furniture Co.* v. *Jackson,* 174 Ark. 527, 295 S. W. 970; *Prewett* v. *Waterworks Imp. Dist. No.* 1, 176 Ark. 1166, 5 S. W. (2d) 735.'' See also, *Coley* v. *Westbrook,* 208 Ark. 914, 188 S. W. 2d 141; *Crump* v. *Loggains,* 212 Ark. 394, 205 S. W. 2d 846; *Timmons* v. *Brannan,* 225 Ark. 220, 280 S. W. 2d 393.

In the fourth subdivision of Ark. Stats., Sec. 27-1121, it is also now provided that a defendant *must* set out in his answer as many grounds of defense, counterclaim, or set-off as he shall have, and we have held the provision mandatory. *Shrieves* v. *Yarbrough,* 220 Ark. 256, 247 S. W. 2d 193. The manifest purpose of this and similar statutes is to enable litigants to settle all matters in dispute between them in a single suit. *Troxler* v. *Spencer,* 223 Ark. 919, 270 S. W. 2d 936.

In *Hatch* v. *Scott,* 210 Ark. 665, 197 S. W. 2d 559, relied on by appellants, a judgment for a tenant in an unlawful detainer action involving the issue as to service of a notice to quit, was held not *res judicata* of tenant's

rights under renewal provision of lease presented in a subsequent suit by the landlord to construe the lease, and for its cancellation and a writ of possession, in the absence of a showing that such issues were in fact decided in the first action. We there pointed out that there was nothing in the record of the former proceeding to show what the circuit court's judgment was based on. Nor was there any showing that the former judgment involved a decision of the merits of the case. In the case at bar the matter of the repeated breaches of the non-competitive agreement prior to May, 1956, constituted the primary and controlling issue in the prior injunction suit and was there very definitely and directly adjudicated on the same proof that was offered here. Any claim that appellants had for damages on account of these repeated breaches of the contract could and should have been interposed in that suit. Under the foregoing rules, we conclude that the chancellor did not err in sustaining appellees' plea of *res judicata* to the counterclaim for any damages by reason of breaches of the contract occurring prior to May 2, 1956.

The question whether appellants introduced sufficient evidence to sustain a judgment against appellees for damages by reason of Hudgens' breach of the contract after May 2, 1956 and prior to April 1, 1957, has given us much concern. It was shown that in several instances after May 2, 1956, Hudgens sold lots in the restricted area to the Commercial Corporation, which took mortgages back from its vendees for part of the sale price and in some instances assigned said mortgages to Hudgens. F. H. Olmstead also testified that he saw Hudgens "very active" in the restricted area after May 2, 1956, but did not know just what he was doing. Hudgens' brother and nephew owned stock in the Commercial Corporation but there was neither allegation nor direct proof that Hudgens conspired with the corporation's stockholders to circumvent and violate the non-competitive agreement. Commercial Corporation is not a party to the instant suit and there is no showing that Hudgens, or any corporation he was interested in, fur-

nished any of the materials for the houses constructed after May 2, 1956. The former decree did not enjoin Hudgens from selling lots in the restricted area. In these circumstances, we cannot say the chancellor erred in holding the evidence insufficient to assess damages against appellees on account of alleged breaches of the contract occurring after May 2, 1956.

After termination of the non-competitive contract on April 1, 1957, Commercial Corporation opened a building material yard in the restricted area near that of the appellants and Hudgens subsequently became a stockholder in the corporation. Olmstead testified that he observed a dual sign post on the business premises in September, 1957, reading "Commercial Corporation" on one side and "Rosedale Building & Supply Company" on the other. It is argued that appellees should be perpetually enjoined from using the name "Rosedale" in the rather extensive area involved. Since appellants' own business is called "Rosedale Lumber and Paint Co.," it is insisted that appellees' use of the word "Rosedale" is misleading and tends to create confusion and an infringement on appellants' trade name. This was not made an issue in the pleadings nor is there any proof to sustain appellants' contention that use of the word would be misleading or confusing.

Appellants' other contention is that they were entitled to damages of $1,600 for attorney fees and other costs incurred in litigating the first suit. In the first place, there is no provision under our statutes and decisions to allow attorney fees and miscellaneous expenses as elements of damage in an action for breach of contract. *Evans* v. *Ozark Orchard Co.,* 103 Ark. 212, 146 S. W. 511; *Romer* v. *Leyner,* 224 Ark. 884, 277 S. W. 2d 66. Even if such items were recoverable, the right to them could and should have been asserted in the prior suit under the principles already announced.

The decree is affirmed.