MIGUEL A. CRUZ, Plaintiff and Appellee, *v.* EULALIO ORTIZ, Defendant and Appellant.

No. 11867. Resubmitted May 20, 1961.—Decided May 31, 1961.

804

*Víctor Rivera Colón* for appellant. *César Andreu Ribas* for appellee.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On May 27, 1949, plaintiff Miguel Ángel Cruz filed a petition for injunction in the former District Court of San Juan, alleging that he is the owner of a house in Degetau Street, Santurce; that respondent is the owner of an adjacent three-story building, at present unfinished; that more than two years ago, that is, in or before 1947, when respondent finished erecting the walls of said building which is adjacent to petitioner, he left six holes or openings in those walls making it possible for rats to pass and through which garbage is thrown into his lot, and in the third story of his building respondent has left some overhanging wood mouldings which threaten to fall on the lot, or on the garage of petitioner's house; that defendant also installed an outlet pipe causing it to project into petitioner's lot and from which pestilent faecal matter comes. Petitioner complained that the foregoing "makes unbearable the stay of petitioner and his relatives in their home since they are subjected to the odors coming from the sewer pipes of defendant's building, thus disturbing the peace and tranquility of petitioner's home and impairing his health and happiness." No claim was made for the damages suffered by plaintiff and his family as a result of the above-mentioned facts.

On May 16, 1951 a writ of injunction was issued directed to defendant Ortiz, whereby he was ordered and required to: (1) close the openings in the walls adjacent to plaintiff's property; (2) remove the above-mentioned wood mouldings, (3) close certain openings and windows in a frame pent house which had been erected on the roof of the building; (4) eliminate certain outlets to prevent water and garbage from falling on plaintiff's garage, and (5) plaster a wall in order to avoid parts of concrete blocks from falling off. On appeal, we affirmed the judgment. *Cruz* v. *Ortiz*, 74

P.R.R. 298 (1953). We specifically decided that, having considered the allegations as a whole, it appeared that plaintiff would suffer irreparable damages, and that because of the continuous nature of the acts charged, he was subject to a multiplicity of suits, and that the ordinary remedy at law was inadequate. Section 677 of the Code of Civil Procedure (32 L.P.R.A. § 3523).

On April 30, 1953, three months after judgment was affirmed, Cruz filed an action against Ortiz, claiming damages and alleging that the plastering of the wall of defendant's building was not completed, although the construction of the same had been "finished" since 1949, thereby causing parts of blocks and cement to fall off; that despite the writ of injunction, the wood mouldings have not been eliminated; that every time that pieces of cement and pieces of moulding loosen off they fall on plaintiff's house and garage and the undue accumulation has created "a nest of animals and insects" on the roof of said buildings, jeopardizing plaintiff's health and that of his relatives; that respondent has not closed various openings in two party walls, and that besides defendant has allowed two wires "charged with electricity" to remain in one of the adjoining walls, thereby exposing plaintiff's house to a fire, it being a frame house; that this situation *has been continuous* since 1949 and that the alleged facts openly violate the writ of injunction issued. The complaint ends by claiming damages for the loss of "privacy," the restlessness caused by the danger of diseases due to the accumulation of garbage on the roof of plaintiff's house and garage, the fear of a fire, damages to the car and to the roof of plaintiff's house, the fear and restlessness caused by the insecurity due to the possibility of pieces of cement falling off, and the extreme nervousness or insomnia produced by the fear of being hurt at any time by the slipping off of pieces of cement.

Defendant set up the defense of res judicata alleging

that plaintiff could not recover since in the petition of injunction he had not claimed the damages alleged in the complaint at bar. The allegation was dismissed. We issued a writ of certiorari to review the same, and we finally affirmed it, *Ortiz* v. *Superior Court*, per curiam, decided on April 29, 1954, on the ground that the facts stated in the complaint were not identical and did not constitute the same cause of action set up in the petition for injunction and which had culminated in a final judgment for plaintiff, since it was also alleged that the acts charged openly violated said judgment. We stated that "it is clearly indicated in the tenth paragraph [of the complaint] . . . that the claim is for damages caused by the defendant's alleged violation of the judgment of *injunction; that is, the damages occurring after said judgment.*" We did not decide, because it was unnecessary in order to determine the defense of res judicata whether plaintiff may recover for the damages suffered before the petition for injunction was filed, and during the prosecution thereof until the judgment became final and unappealable (*firme*) when it was affirmed by this Court on January 26, 1953.

After trial the Superior Court, San Juan Part, rendered judgment on July 12, 1955, granting the complaint for damages and ordering defendant to pay plaintiff the following amounts:

$125 for expenses in repairing a garage

$150 for expenses in changing sewer pipes to avoid filtration of pestilent waters;

$500 paid for attorney's fees to César Andréu Ribas, attorney-at-law, as counsel for plaintiff in the petition for injunction;

$4,000 by way of transgressions, restlessness and personal insecurity in not allowing plaintiff to use and freely enjoy his property and live peacefully during the last five years;

$500 for attorney's fees.

On appeal, defendant assigns the commission of four errors by the trial court: (1) in setting aside the defense of res judicata; (2) in granting an amount for attorney's fees paid by plaintiff to his attorney in the petition for injunction; (3) in granting excessive, unreasonable and arbitrary compensation; and (4) in rendering judgment contrary to the facts and the law.

## I

■■■ One of the best known aspects of the application of the plea of res judicata is that which refers to the splitting by one party of his claims against another person. A petitioner should wholly state his cause of action in the suit which he files. Otherwise, he may not be allowed to bring a new action later, for the part which he did not include, since the judgment which may have been rendered in the first suit is conclusive, not only regarding that which was actually litigated, but also as to all the claims which may have been determined therein. We have frequently applied this modality of res judicata. *Miller* v. *Cía. Ron Carioca*, 71 P.R.R. 662 (1950) (delivery of equipment and damages suffered as a result of illegal seizure); *Avellanet* v. *Porto Rican Express Co.*, 64 P.R.R. 660, 667 (1945) (breaches of contracts of employment); *Heirs of Rivera* v. *Lugo*, 63 P.R.R. 13 (1944); *Laloma* v. *Fernández*, 61 P.R.R. 550 (1943); *Encarnación* v. *Maeso*, 48 P.R.R. 468 (1935) (rescission of contract and damages); *cf. Blanco* v. *The Capital*, 77 P.R.R. 607 (1954) and *Capó* v. *A. Hartman & Co.*, 57 P.R.R. 190 (1940).

Is this rule applicable when one party files a petition for injunction, obtains judgment, and then brings an action for the damages suffered, including those caused by acts prior to and during the injunction proceedings? American decisions are not unanimous on this matter. During the first quarter of the century, the tendency was to hold that

injunction decisions could not be invoked as res judicata in order to defeat the subsequent damage action, although there always were isolated manifestations to the contrary. *Decree granting injunction as bar to action at law for past damages on account of thing enjoined,* 14 A.L.R. 543 (1921). However, the fundamental changes operated in the proceedings and the neglect of federal jurisdiction to distinguish between legal and equitable remedies have shown a majority tendency to hold that decree in the injunction suit is conclusive of all issues raised therein, as well as all those which may have been raised, including the damages caused before the commencement and during the substantiation of the injunction. *Decree granting or refusing injunction as res judicata in action for damages in relation to matter which injunction was asked in first suit,* 26 A.L.R.2d 446 (1952). In *Restatement, Judgments,* § 66(a), in fine, pp. 283–284, it is stated that the general rule prevailing in those states wherein the differences between legal and equitable remedies have disappeared is to the effect that plaintiff is compelled to claim in the equity proceeding—injunction—whatever damages he may be entitled to, for the acts of the defendant sought to be enjoined; and if he makes no demand for damages, he is precluded from thereafter maintaining an action at law to recover them.

Aside from the foregoing, the majority of cases refusing the plea of res judicata in the situation adduced discuss whether the allegation of damages was essential or whether it was one of the essential grounds for the success of the petition for injunction, and specifically, whether the evidence adduced in the first suit would have been sufficient to justify a damage judgment, coupled with evidence regarding its amount. In other words, *the identity of the damages claimed* played a very important part. *Kellhiher* v. *Stone & Webster Inc.,* 75 F.2d 331 (C.C.A. 5, 1935).

Let us examine briefly the statements of American cases on this point, with special emphasis on the facts involved in each case. In *Wischmann* v. *Raiker*, 97 N.W.2d 551 (Neb. 1959), a farmer was granted an injunction to enjoin the owner of an adjoining farm from lighting and draining certain waters flowing through both farms since the new diversion of water flooded part of his land making them unfit for cultivation. He was granted a writ of injunction and although he *did not* seek to recover damages, the court in a subsequent trial denied the compensation for damages suffered until the judgment in the original case, on the ground that the farmer should have sought to recover damages in same petition for injunction. *Cf. Brchan* v. *Crete Mills*, 52 N.W.2d 333, 339 (Neb. 1952). See commentary on the *Wischmann* case in *Effect of Suit for Injunction on Subsequent Suit for Damages*, 39 Neb. L. Rev. 441 (1960). In *Olmstead* v. *Rosedale Building and Supply*, 313 S.W.2d 235 (Ark. 1958) a suit for injunction was brought to restrain defendant corporation from violating the agreement not to compete in the sale of building supply in certain area. Even when the decree was filed, it was decided that petitioner could not recover the items which he neglected during the period prior to judgment, since he should have claimed them within the original suit. In *Robin Sportwear, Inc.* v. *Granmore Realty Corp.*, 145 N.Y.S.2d 636 (1955) the amendment of a petition for injunction was permitted as to include a prayer for damages until the trial, since according to the court, if it was not permitted, the wronged party would be precluded from recovering them in a subsequent action at law. And in *Maflo Holding Corp.* v. *S. J. Blume, Inc.*, 127 N.E.2d 558 (N.Y. 1955), the landlord of a property resorted to injunction in order to estop one of his tenants from refusing him access to the leased premises, but it was held, citing with approval *Inderlied* v. *Whaley*, 50 N.E. 1118

(1898), in an action for recovery of damages, that the landlord could not recover them if he had not included them in his original petition. In *Orloff* v. *Hollywood Turf Club*, 242 P.2d 660 (Cal. 1952), a bettor was ejected from the horse races being held in two California race tracks. He was refused the right to recover damages referring to any period prior to an injunction suit which he filed in order to acquire admission to said race-tracks. In *Crawford* v. *Baker*, 72 S.E.2d 790 (Ga. 1952), an injunction was obtained in order to enjoin breach of contract, and later it was decided that plaintiff may not recover the damages which at the time of the bringing of his action had already accrued. In one of the first cases wherein the plea of res judicata was upheld, *Gilbert* v. *Boak Fish Co.*, 90 N.W. 767 (Minn. 1902), an action for injunction was brought for the abatement of a nuisance caused by keeping a stock of fish which emitted odors, in the premises adjoining a hotel. The court did not accede to the recovery of damages prior to the time of the trial. See, besides, *Currier* v. *Perry*, 44 P.2d 184 (Wash. 1935); *Schmidt* v. *Weyell*, 113 N.Y.S. 630 (1908); *Holbrook* v. *Griffis*, 103 N.W. 479 (Iowa 1905).

In other cases courts have held that the plea of res judicata can not be placed against the recovery of existing damages at the time of judgment in the injunction suit. In *Mathews* v. *Jackson Electric Membership Corp.*, 99 S.E.2d 556 (Ga. 1957), plaintiff obtained an order against defendant corporation directing the latter to furnish plaintiff with electric service. Afterwards, evidence on and compensation for damages occurring before date of order was permitted. It was stated that under the circumstances involved, plaintiff would have had the right to the service requested by him, aside from the allegation on damages claimed. By the same token, in *Bush* v. *City of Laurel*, 105 So.2d 562 (Miss. 1958), it was held that the damages could be claimed in an independent suit even after having obtained an injunction to

restrain defendant from asserting any claim to the property involved in the controversy.[1] See, also, *Ledingham* v. *Farmers Irrigation District*, 281 N.W. 20 (Neb. 1938) ; *Norwood* v. *Eastern Oregon Land Co.*, 7 P.2d 996 (Ore. 1932) ; *Louisville Gas Co.* v. *Kentucky Hearing Co.*, 111 S.W. 374 (Ky. 1908) and *Purdue* v. *Ward*, 106 S.E. 874 (W. Va. 1921).[2]

 Only a few days ago we stated in *Bolker* v. *Superior Court; Sosa, Int., ante,* p. 785 (1961), that demurrer of res judicata is directed, among other things, to avoid the perpetuation of judicial controversies. We should add that it also serves the purpose of avoiding continuous hardship to one party by successively filing various suits related to the same matter. This is especially convenient in jurisdictions such as ours where our courts are heavily burdened with judicial work because of the large number of suits. This same matter has been before this Court twice before. We hope that on this third occasion the rights of the parties are clearly defined and any further judicial action be rendered unnecessary.

Having considered all the factors which we have pointed out, and particularly the development of our civil procedural system which is on the forefront regarding the purpose of administering justice speedily, and that locally the division between legal and equitable actions does not prevail, we establish as a local norm that the rule of the splitting of causes of action precludes plaintiff from claiming in a subsequent suit for damages already existing and caused while a writ of injunction was being prosecuted, to enjoin or forbid precisely the continuation of the actions and activities causing the damages. We believe, however, that the appli-

---

[1] Our local rule permits the recovery of fruits yielded or that might have been yielded after being successful in an action of revendication, *Capó* v. *A. Hartman & Co.*, 57 P.R.R. 190 (1940), and in a subsequent suit filed after obtaining judgment in a previous suit on unlawful deprivation of property, *Blanco* v. *The Capital*, 77 P.R.R. 607 (1954).

[2] The *Purdue* case was modified in *Smith* v. *Haymond*, 64 S.E.2d 105 (W. Va. 1951).

cation should be limited to those damages which could have been *claimed* and *proved* within the suits for injunction. We believe it to be more just to adopt as a limit of exclusion the date of the hearing of the injunction, and not that of the final judgment, as seems to be the favorite alternative in the United States.

In applying the adopted rule to the facts of the case at bar, it would seem that plaintiff may only recover the damages which were caused after the date of the hearing of the petition for injunction—a last opportunity which he had for the claim of the previous damages. We wish to point out, besides, that even in view of the rule which allows for the recovery of all the damages, we would arrive at a similar conclusion, since in this case the allegation that plaintiff was suffering damages was one of the essential allegations for the success of his suit for injunction. Such was our view precisely in the appeal filed against the judgment granting the injunction when we held, in deciding insufficiency of the allegations, that "the complaint does not have to allege specifically and expressly, in exact words, that plaintiff would suffer irreparable damages." *Cruz* v. *Ortiz, supra* at 302. The damages suffered after the date of the hearing of the petition for injunction in the trial court, that is, since March 15, 1951, will be thus granted.[3]

## II

■■ The item of $500 paid to César Andréu Ribas, attorney-at-law, as compensation for his professional services to plaintiff Cruz in the injunction suit is not an element of damages which may be recovered within this action. Even though said amount was actually paid, which is besides a very reasonable amount, if plaintiff thought he was entitled

---

[3] Except for the unimportant differences, the damages claimed in the present action arise from the same facts which gave rise to the filing of the injunction. Compare the allegations as we have stated them at the beginning of this opinion.

to be awarded attorney's fees in the injunction proceeding, he should have tried to recover them within the above-mentioned suit. The court which took cognizance of said action did not impose attorney's fees because evidently it believed that the defendant party had not acted with obstinacy. Plaintiff Cruz did not appeal then from this pronouncement which is part of a final judgment. He may not relitigate this question now. *Blanco* v. *The Capital*, 77 P.R.R. 607, 612 (1954); *Vélez* v. *General Motors Acceptance Corp.* 59 P.R.R. 583, 587–588 (1941); *cf. Gutiérrez* v. *Ginorio*, 58 P.R.R. 432 (1941). *Avalo* v. *Cacho*, 73 P.R.R. 274 (1952) presents a different situation of facts, since it was sought to recover, in an action for damages for wrongful attachment, as an element of compensation, the amount spent by plaintiff to obtain the dissolution of the attachment. See, besides, *Muñiz de León & Co.* v. *Melón Hnos. & Cía.*, 56 P.R.R. 314 (1940); *San Juan R. & S. Club* v. *Castro et al.*, 38 P.R.R. 301 (1928) and *Burgos* v. *Esteves*, 38 P.R.R. 396 (1928); *Expense of litigation, other than taxable costs, as basis of separate action against party to former suit*, 39 A.L.R. 1218 (1925); *American Fire Protection Service* v. *Williams*, 340 P.2d 644 (Cal. 1959); *Ritter* v. *Ritter*, 46 N.E.2d 41 (Ill. 1943); *cf. Right to recover as damages attorneys' fees incurred in earlier litigation with a third person because of involvement therein through a tortious act of present adversary*, 45 A.L.R.2d 1183 (1956); *Harry's Thrifty Tavern* v. *Pitarra*, 166 A.2d 908 (Md. 1961); *Hiss* v. *Friedberg*, 112 S.E.2d 871 (Va. 1960).

## III

The other errors assigned—that judgment is contrary to the evidence, and that the compensation granted was excessive—only call for a brief consideration. The evidence fully justified the existence of the damages, specially if we consider the remarks made by the trial judge during the inspec-

tion of the premises on July 12, 1955, that is, when almost 30 months had passed since the judgment ordering the issuance of the injunction had been affirmed.

For the reasons stated the judgment appealed from shall be modified by eliminating the item of $500 for attorney's fees paid to Mr. Andréu in the injunction suit and the amount of damages due to the transgressions, restlessness, and insecurity suffered by plaintiff [4] is reduced to $2,000. As thus modified, it is affirmed.

Mr. Justice Belaval and Mr. Justice Santana Becerra did not participate.

---

[4] We have examined the transcript of the evidence and although vaguely and indistinctly, the evidence states that the amounts of $125 for expenses in repairing a garage and $150 for expenses in changing sewer pipes to avoid the filtration of pestilent waters, were paid during the year 1953 (Tr. Ev. 30, 32 and 33), and therefore, after the date of the hearing of the injunction suit. However, in the transcript of the preliminary hearing held in the injunction suit (p. 16), reference is made to the work which plaintiff had to carry out in order to close the sewer pipes. However, since this transcript does not form part of the record in the case at bar, we will abstain from altering the conclusion of the trial court, which is correct in the light of the evidence it considered.